**Reverse and Render in part; Affirm in part; Opinion Filed November 20, 2013**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-12-00492-CV

### BERRYMAN'S SOUTH FORK, INC. AND RICHARD BERRYMAN, Appellants
### V.
### J. BAXTER BRINKMANN INTERNATIONAL CORPORATION, THE BRINKMANN CORPORATION AND J. BAXTER BRINKMANN, Appellees

**On Appeal from the 192nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. 08-05771**

## OPINION

Before Justices FitzGerald, Lang, and Myers
Opinion by Justice Lang

This case arises from a written contract (the "Agreement") under which appellee J. Baxter Brinkmann International Corporation ("JBBI") employed appellant Berryman's South Fork, Inc. ("BSF") for the purpose of "engaging the full-time services" of appellant Richard Berryman ("Berryman") as a "sales and marketing representative." Appellees JBBI and The Brinkmann Corporation ("TBC") filed this lawsuit against appellants asserting claims for, in part, declaratory judgment, breach of contract, and money had and received. Appellants (1) counterclaimed against JBBI for, in part, breach of an alleged contract to pay Berryman's expenses and (2) asserted claims against J. Baxter Brinkmann, individually, ("Brinkmann") as a

third party defendant.[1]  Appellees filed a motion for (1) traditional summary judgment in their favor on the claims asserted by JBBI and TBC and appellants' counterclaims and (2) no-evidence summary judgment in their favor on appellants' counterclaims.  The trial court signed a final judgment in which it (1) sustained appellees' objections to an affidavit of Berryman filed by appellants as summary judgment evidence, (2) granted appellees' motion for summary judgment, (3) made declarations respecting the Agreement, and (4) awarded appellees damages, attorneys' fees, interest, and costs of court.

In eleven issues on appeal, appellants contend the trial court erred because (1) the evidence raises fact issues as to the parties' claims; (2) the declaratory relief requested by JBBI and TBC was "redundant with" their breach of contract claim and therefore was "barred as a matter of law"; (3) appellees "failed to conclusively prove the reasonableness and necessity of the claimed [attorneys'] fees by not segregating fees"; (4) Brinkmann, individually, did not recover on any cause of action and therefore should not have been awarded damages, attorneys' fees, interest, or costs of court; and (5) the sustaining of appellees' objections to Berryman's affidavit constituted an abuse of discretion.

For the reasons below, on this voluminous summary judgment record, we reverse the trial court's judgment in part, render judgment in part, and otherwise affirm the trial court's judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

---

[1] In this opinion, unless otherwise specified, "appellees" refers to, collectively, JBBI, TBC, and Brinkmann.

The Agreement was executed on July 2, 2001.[2]  It stated in part that JBBI "desires to employ the services of [Berryman], through [BSF], for the benefit of [JBBI] and its affiliated companies."  Additionally, the Agreement provided in part

2. Compensation

In exchange for the services to be rendered hereunder by [Berryman], [JBBI] shall pay, or cause to be paid, the sum of one million dollars per year in equal monthly installments. . . .

3. Term

This Agreement is for a term of five years starting August 1, 2001 and is to be renewed annually thereafter unless either parties [sic] gives notice in writing 90 days prior to the end of any anniversary date.  Notwithstanding the five year fixed term, [JBBI] may terminate this Agreement and have no further payment obligation if [Berryman] is unable to perform full-time services due to death or disability or has failed to carry out the duties of a senior sales and marketing representative in accord with general industry standards.

Approximately seven years after the Agreement was executed, an attorney for appellants sent JBBI a letter dated May 20, 2008.  In that letter, appellants' attorney stated that as a result of actions taken by JBBI, "including, but not limited to, making defamatory statements" to JBBI employees and others, JBBI had "substantially undermined [Berryman's] ability to perform his job duties and responsibilities" and therefore had "constructively terminated [Berryman] and breached the implied covenant of good faith and fair dealing with respect to the Agreement."  Further, appellants' attorney (1) stated JBBI had "failed and refused" to reimburse Berryman for approximately $160,000 in expenses that JBBI was "obligated to pay" pursuant to "Mr. Berryman's contract" with JBBI and (2) requested that JBBI contact him to "negotiate a fair and equitable severance for Mr. Berryman."

---

[2] As described above, the parties to the Agreement were JBBI and BSF.  Additionally, Berryman, individually, guaranteed the obligations of BSF.

On May 23, 2008, JBBI and TBC ("plaintiffs") filed this lawsuit against BSF and Berryman ("defendants"). In their original petition, plaintiffs asserted a claim for "declaratory judgment relief." Specifically, plaintiffs requested in part that the trial court declare (1) "whether [d]efendants have carried on its or their required duties under the terms of the [Agreement]"; (2) that plaintiffs have not violated the terms of their "agreements or obligations, if any," to defendants; and (3) "other declaratory relief as necessary to terminate the controversy and remove uncertainty relating to the [plaintiffs'] alleged remaining rights and obligations to [d]efendants, if any." Further, plaintiffs requested "reasonable and necessary attorneys' fees incurred herein and on any appeal."

In a letter to defendants dated August 29, 2008, counsel for JBBI stated (1) defendants had failed to perform as obligated under the Agreement "for some months now" and (2) JBBI "hereby terminates the Agreement as permitted in Section 3 and as otherwise allowed by law." Subsequent to that letter, plaintiffs filed supplements to their original petition in which they added claims for breach of contract and "money had and received/unjust enrichment." In their breach of contract claim, plaintiffs alleged in part that defendants "failed and refused and continue to fail and refuse to fulfill their obligations under the [Agreement]," thus entitling plaintiffs to damages and attorneys' fees. In their claim for "money had and received/unjust enrichment," plaintiffs asserted in part that "during the May 2008 through August 2008 time period," defendants "received monies they were not entitled to keep and to which they have been unjustly enriched." Pursuant to that claim, plaintiffs sought to recover approximately $334,000 received by defendants during that time period, including (1) "$291,666.66 paid during a time period [defendants] performed no work for [plaintiffs]" and (2) approximately $42,000 in "Airplane Allowance payments" made to defendants pursuant to a "separate verbal agreement" that plaintiffs would "provide [d]efendants an upfront allowance for expenses (up to $12,000 per

–4–

month) [d]efendants incurred related to the operation of an aircraft to be used to assist [d]efendants in performing their duties owed to [p]laintiffs" (the "Airplane Allowance").

Defendants filed a general denial answer and asserted several affirmative defenses, including "equitable estoppel." Additionally, defendants asserted (1) a counterclaim against JBBI for "breach of contract relating to reimbursement of expenses," in which defendants contended they were owed $157,600.83 in "expenses not paid" by JBBI; and (2) claims for business disparagement, defamation, and exemplary damages against Brinkmann as a third-party defendant.

JBBI and Brinkmann filed separate general denial answers to defendants' counterclaims. Additionally, JBBI asserted several affirmative defenses, including the statute of frauds. Further, in Brinkmann's prayer for relief in his answer, he requested, in part, that he recover costs of court.

On December 12, 2011, plaintiffs and Brinkmann filed a motion for (1) traditional summary judgment on plaintiffs' breach of contract, money had and received, and declaratory judgment claims and defendants' counterclaims and (2) no-evidence summary judgment on defendants' counterclaims. In their motion, plaintiffs stated in part (1) "[b]ased on [d]efendants' breach of contract, [p]laintiffs are entitled to elect as their remedy the recovery of the largest damage amount suffered due to [d]efendants' breach, such amount being the $291,666,67 paid from May through August 2008, plus attorney's fees totaling $160,948.00"; (2) to "prevent unjust enrichment," defendants must return to plaintiffs "overpayments" of "$291.666.67 for work not performed"[3] and "$41,999.96 in Airplane Allowance payments"; (3) defendants "ceased performing under the Agreement in at least May of 2008, and thereby materially

_____

[3] Plaintiffs stated in their brief in support of their motion for summary judgment that they "will only be entitled to collect and will only seek the $291,666.67 once."

breached same"; (4) "[t]he Agreement was terminable from [May of 2008] forward by [p]laintiffs, and no further obligations are due under the Agreement following its lawful termination in August 2008"; (5) "[n]otwithstanding [p]laintiffs' proper termination of Agreement for cause, the Agreement actually expired on August 1, 2008"; and (6) JBBI did not breach the Agreement or "any ancillary agreement to pay business expenses."

The appendix filed in support of the summary judgment motion included, in part (1) excerpts from depositions of Berryman and Brinkmann; (2) an affidavit of Brinkmann; (3) copies of the Agreement and correspondence described above; and (4) an affidavit of plaintiffs' counsel respecting attorneys' fees.

Berryman stated in part in his deposition that (1) his job responsibilities pursuant to the Agreement included preparing for and attending meetings with retailers' representatives to solicit orders for JBBI's products, communicating "almost on a daily basis" with Brinkmann, and participating in the "finalization" process respecting retailers' orders; (2) during two separate meetings in 2006 and 2008, Brinkmann complained in front of retailers' representatives that Berryman "didn't work" and buyers did not want to do business with Berryman; (3) Berryman was still able to perform his duties after Brinkmann's negative comments were made; (4) in approximately April 2008, JBBI hired Mike Bush; (5) at the time Bush was hired, Bush told Berryman that Berryman was "being replaced" by Bush; (6) Berryman was not replaced by Bush; (7) there is no written agreement for reimbursement of expenses; (8) at approximately the same time the Agreement was executed in 2001, Berryman and Brinkmann entered into an oral agreement that Berryman's business expenses would be reimbursed by JBBI; (9) after May 20, 2008, Berryman did not return Brinkmann's calls, with one exception in which he told Brinkmann his attorney had advised him not to speak with Brinkmann; did not participate in

"finalization" negotiations; and did not attend any meetings; and (10) from May 2008 to August 2008, Berryman continued to receive and accept checks from Brinkmann.

Brinkmann testified in part in his deposition and affidavit (1) although reimbursement of Berryman's expenses was not part of "the deal," he reimbursed Berryman for various expenses starting in 2001 and continuing until at least 2006; (2) defendants ceased performing their required duties under the Agreement "as early as the first half of May 2008"; (3) after defendants ceased performing under the Agreement, JBBI "hoped [d]efendants would resume performance" and paid BSF $41,999.96 in airplane allowance payments and an additional sum of more than $291,666.67; and (4) BSF and Berryman have not returned those amounts to plaintiffs.

Finally, counsel for plaintiffs testified in part in his affidavit (1) at least 85%, or $127,073, of the attorneys' fees and paralegal fees incurred by plaintiffs so far "are recoverable against the [d]efendants in this lawsuit"; (2) "it is reasonable to conclude that [plaintiffs'] counsel's activities cannot all be segregated by task and as such are dependent on the same or similar sets of facts and circumstances, are part of many of the same tasks, and are therefore so intertwined that they cannot be so separated or segregated"; (3) a fair estimate of additional attorneys' fees likely be incurred by plaintiffs through the hearing on plaintiffs' motion for summary judgment to advance plaintiffs' "affirmative claims" against defendants is at least $33,875; and (4) in the event of appeal of plaintiffs' "affirmative claims," plaintiffs will likely incur at least an additional $35,000 in fees in defense of an appeal to the Dallas Court of Appeals, $20,000 in fees in briefing an appeal to the Texas Supreme Court, and $15,000 in fees if the Texas Supreme Court grants a hearing on such appeal.

In their amended response to plaintiff's motion for summary judgment, defendants argued in part (1) the agreement to pay expenses was an enforceable "oral modification" and/or "implied in fact modification" of the "original contract" entered into between the parties on July

2, 2001; (2) Berryman was justified in discontinuing performance under "the written contract and oral modification of the contract" in May 2008 because he was relieved of performance by plaintiffs' "material breach," i.e. plaintiffs' "slanderous statements," hiring of Bush, and failure to pay Berryman's expenses; (3) equitable relief is not warranted because Berryman received and accepted the sums paid to him as part of the damages he is entitled to receive as a result of plaintiffs' "material breach" of the "contract between the parties"; and (4) the statute of frauds does not apply to the oral agreement to reimburse expenses because "each of the claims was capable of being performed within one year" and, alternatively, "part performance by the parties" takes the oral agreement outside the statute of frauds. Attachments to defendants' response included an affidavit of Berryman and an "Expense Report Tracking Log" that showed $157,600.83 in "outstanding" expenses incurred by Berryman from 2006 to 2008.

Plaintiffs filed (1) "objections to and motion to strike defendants' 'evidence' in support of their amended response" and (2) supplemental objections to defendants' summary judgment evidence. Therein, plaintiffs contended Berryman's affidavit (1) contains irrelevant testimony; (2) lacks necessary attachments; (3) is a "sham affidavit" as to specified statements of Berryman in paragraphs 9, 12, 15, 16, 19, 22, 24, and 28; (4) "fails to set forth actual facts based upon Berryman's personal knowledge"; and (5) "cites Berryman's conclusory personal beliefs based upon conjecture and hearsay." Specifically, in an objection to Berryman's affidavit "as a whole," plaintiffs stated in part

> Berryman amended his [affidavit] to assert that he possessed personal knowledge of all of "the facts set forth" in the [affidavit], based upon (1) his conversations with [Brinkmann], (2) conversations with unidentified employees of JBBI, (3) the unattached "business records" of JBBI . . . and (4) the unattached "business records" of [BSF]. Berryman cannot rely on hearsay to demonstrate his "personal knowledge."

(citation to record omitted).

Additionally, plaintiffs filed a reply to defendants' response to the motion for summary judgment. Plaintiffs asserted in part (1) defendants' election to continue performance after plaintiffs' alleged nonpayment of expenses starting in 2006 precluded any excuse for defendants' terminating performance; (2) defendants' response did not raise a legal claim or fact issue respecting defendants' contentions that plaintiffs "prevented [d]efendants from being able to perform under the [Agreement]" or "'constructively terminated' [d]efendants"; (3) defendants have no damages for breach because plaintiffs "paid the entire value" of the Agreement; (4) the oral agreement alleged by defendants respecting payment of expenses was not performable within one year and therefore is precluded by the statute of frauds and, alternatively, "lacks definitive contract terms"; and (5) while defendants' response "appears to argue" that application of the statute of frauds is precluded by "partial performance," defendants provide "only a footnote citation without analysis" respecting that argument.

In the final judgment described above,[4] the trial court (1) defined "movants" as JBBI, TBC, and Brinkmann, collectively, and (2) ordered that "summary judgment is granted in favor of Movants on their breach of contract, money had and received, and declaratory judgment claims." Further, the trial court ordered therein that "Movants shall recover from Defendants, jointly and severally," (1) "actual damages in the amount of $333,666.63," which "includes $291,666.67 for contract payments made by Plaintiffs to Defendants when work was not being performed by Defendants, and $41,999.96 in Airplane Allowance payments made by Plaintiffs to Defendants when work was not being performed by Defendants"; (2) "their reasonable and necessary attorneys' fees as a result of the above-mentioned breach of contract and declaratory judgment claims in the amount of $160,948.00"; (3) "$49,117.95 in pre-judgment interest on the

---

[4] The record shows a hearing on appellees' motion for summary judgment was scheduled. However, the record contains no reporter's record of such hearing.

aforesaid amount (excluding attorney's fees)"; (4) additional attorneys' fees in the event of appeal "as set forth in the Movants' uncontested attorneys' fees affidavit"; and (5) "all costs of court incurred and filed with the Court in this action." Additionally, the trial court ordered that "the total amount of this Judgment, $543,732.58, plus costs of court, will bear post-judgment interest at the rate of 5%, compounded annually." Finally, the trial court made declarations respecting plaintiffs' declaratory judgment claim.[5]

Defendants filed a timely motion for new trial, which was overruled by operation of law. This appeal timely followed.

## II. SUMMARY JUDGMENT

### A. Standard of Review

We review a summary judgment de novo to determine whether a party's right to prevail is established as a matter of law. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). We review the evidence presented by the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not.

---

[5] Specifically, the trial court stated in the final judgment

[T]he court holds the following as a matter of undisputed fact and law as it related to Movants' declaratory judgment claim:

a. Defendants ceased performing under the Agreement in, at least, May of 2008 when Berryman refused to fulfill his duties and obligations for Plaintiffs. This constituted a material breach of the Agreement. The Agreement was at a minimum terminable from that point forward by Plaintiffs, and after making every reasonable effort to communicate with Berryman, Plaintiffs lawfully terminated the Agreement in August 2008. Thus, no further obligations are owed or due to Defendants under the Agreement.

b. Notwithstanding Plaintiffs' lawful termination of the Agreement, the Agreement expired on August 1, 2008. The Agreement provides for automatic renewal upon the anniversary date of the contract only if neither party provides written notice to the other party to the contrary. Here, Defendants' Agreement Termination Letter was received by Plaintiffs in May of 2008, and the Agreement expired by its own terms on August 1, 2008 as a result.

c. The Agreement is defined by the four corners of the document, and the alleged oral contracts for expense reimbursement and Airplane allowance are not a part of the Agreement.

d. JBBI did not, constructively or otherwise, breach the Agreement.

–10–

*Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). We must take evidence favorable to the nonmovant as true and indulge every reasonable inference and resolve any doubts in favor of the nonmovant. *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005); *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 800 (Tex. 1994); *Nixon*, 690 S.W.2d at 549; *In re Estate of Berry*, 280 S.W.3d 478, 480 (Tex. App.—Dallas 2009, no pet.). "When summary judgment is sought and granted on multiple grounds, we will affirm if any of the grounds is meritorious." *Zimmerhanzel v. Green*, 346 S.W.3d 721, 724 (Tex. App.—El Paso 2011, pet. denied). Further, with the exception of an attack on the legal sufficiency of the grounds expressly raised by the movant in his motion for summary judgment, "[i]ssues not expressly presented to the trial court by written motion, answer, or other response shall not be considered on appeal as grounds for reversal." TEX. R. CIV. P. 166a(c); *see McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 343 (Tex. 1993); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 676–77 (Tex. 1979).

A party seeking a no-evidence motion for summary judgment must assert that no evidence exists as to one or more of the essential elements of the nonmovant's claim on which the nonmovant would have the burden of proof. *See* TEX. R. CIV. P. 166a(i). The burden then shifts to the nonmovant to produce more than a scintilla of summary judgment evidence that raises a genuine issue of material fact as to each essential element identified in the motion. *Id.*; *Timpte Indus., Inc.*, 286 S.W.3d at 310. More than a scintilla of evidence exists if the evidence would allow reasonable and fair-minded people to reach the verdict under review. *See City of Keller*, 168 S.W.3d at 127.

In a traditional summary judgment, the party moving for summary judgment has the burden to establish that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128

S.W.3d 211, 215–16 (Tex. 2003); *Nixon*, 690 S.W.2d at 548–49. When reviewing a traditional summary judgment granted in favor of the defendant, we determine whether the defendant conclusively disproved at least one element of the plaintiff's claim or conclusively proved every element of an affirmative defense. *Kalmus v. Oliver*, 390 S.W.3d 586, 588 (Tex. App.—Dallas 2012, no pet.) (citing *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997)). A matter is conclusively established if ordinary minds cannot differ as to the conclusion to be drawn from the evidence. *Id*. at 588–89. If the movant satisfies its burden, the burden shifts to the nonmovant to preclude summary judgment by presenting evidence that raises a genuine issue of material fact. *See Affordable Motor Co., Inc. v. LNA, LLC*, 351 S.W.3d 515, 519 (Tex. App.—Dallas 2011, pet. denied).

### *B. Analysis*

### 1. Breach of Contract Claim Asserted by JBBI and TBC

We begin with appellants' second issue, in which they contend "the trial court erred in granting summary judgment on [a]ppellees' claim for breach of contract because it applied an incorrect measure of damages and there was no evidence of recoverable damages." According to appellants, "the evidence of damages was legally insufficient because the evidence represented overpayments that occurred for approximately three months after the alleged breach and thus caused the trial court to utilize an improper measure of damages (an incorrect time period)." Additionally, appellants assert in their reply brief in this Court that "[appellees'] only damage evidence relates to amounts that are not recoverable, rendering their evidence legally insufficient."

Appellees respond (1) appellants "failed to object or otherwise raise to the trial court any allegation that the measure of damages provided by [a]ppellees was somehow improper" and therefore waived the alleged error, (2) appellants "ignore [a]ppellees' right to elect to continue to

perform under the Agreement" and "sue for damages as they accrue when the time for performance under the contract is due," and (3) "[a]ppellants' arguments that [a]ppellees could not 'create or increase' their damages are actually arguing a failure to mitigate," an affirmative defense that appellants did not plead.

"A successful breach of contract claim requires proof of the following elements: (1) a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Petras v. Criswell*, 248 S.W.3d 471, 477 (Tex. App.—Dallas 2008, no pet.); *see Barnett v. Coppell N. Tex. Court, Ltd.*, 123 S.W.3d 804, 815 (Tex. App.—Dallas 2003, pet. denied). "Where damages evidence does not relate to the amount of damages sustained under the proper measure of damages, that evidence is both irrelevant and legally insufficient to support a judgment." *De Escabedo v. Haygood*, 283 S.W.3d 3, 6 (Tex. App.—Tyler 2009), *aff'd sub nom.*, 356 S.W.3d 390 (Tex. 2011).

The record does not show appellants objected to the evidence respecting the measure of damages or otherwise raised that issue in the trial court. However, "a party may challenge the legal sufficiency of the evidence even in the absence of any objection to its admissibility." *Coastal Transp. Co., Inc. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 233 (Tex. 2004). Further, an attack on the legal sufficiency of the grounds expressly raised by the movant in his motion for summary judgment is an exception to the general rule that "[i]ssues not expressly presented to the trial court by written motion, answer, or other response shall not be considered on appeal as grounds for reversal." TEX. R. CIV. P. 166a(c); *see McConnell*, 858 S.W.2d at 343; *Clear Creek Basin Auth.*, 589 S.W.2d at 676–77. Therefore, we conclude appellants did not waive error pertaining to the legal sufficiency of the evidence respecting breach of contract damages.

In support of their assertion that the proper measure of damages was applied in this case, appellees state "when one party repudiates a contract, the other party may then elect to 'treat the repudiation as inoperative and sue for damages as they accrue when the time for performance under the contract is due.'" (quoting *America's Favorite Chicken Co. v. Samaras*, 929 S.W.2d 617, 626 (Tex. App.—San Antonio 1996, writ denied)). Appellees contend they (1) "elected to continue the Agreement in force in an effort to have [a]ppellants resume performance and therefore continued to make payments" and (2) "are entitled to recover the $291,666.67 paid during the time of [a]ppellants' non-performance under the Agreement."

Appellants cite the following statement of law in support of their position: "A party, while in the performance of a contract, when served with notice of its repudiation by the other party, cannot proceed with the performance of the contract except it be one of which specific performance may be enforced and increase the damages to which he would otherwise be entitled." *Osage Oil & Ref. Co. v. Lee Farm Oil Co.*, 230 S.W. 518, 522 (Tex. Civ. App.—Amarillo 1921, writ ref'd). According to appellants, (1) the Agreement was a contract for services and therefore was not subject to specific performance and (2) appellees were not entitled to recover "overpayments that occurred for approximately three months after the alleged breach."

During oral argument before this Court, appellees contended (1) the rule quoted above from *Osage Oil* "has not been followed by a single court" and (2) current case law allows a non-repudiating party to choose to treat the contract as continuing regardless of whether specific performance is available. In support of those arguments, appellees cited three cases. *See Bumb v. Intercomp Tech., L.L.C.*, 64 S.W.3d 123 (Tex. App.—Houston [14th Dist.] 2001, no pet.); *Avasthi & Assoc., Inc. v. Dronamraju*, No. 01-11-00786-CV, 2012 WL 6644873 (Tex. App.—Houston [1st Dist.] Dec. 20, 2012, pet. denied) (mem. op.); *C.K. Oil Props., Inc. v. Hrubetz*

*Operating Co.*, No. 11-99-00066-CV, 2002 WL 32344609 (Tex. App.—Eastland Apr. 25, 2002, no pet.) (not designated for publication).

In *C.K. Oil*, Hrubetz Operating Company ("HOPCO") contracted to operate certain gas and oil leases. *C.K. Oil*, 2002 WL 32344609, at *1. Subsequently, a working interest in the leases was conveyed to C.K. Oil Properties, Inc. ("C.K."). *Id.* C.K. informed HOPCO that HOPCO was terminated as operator and advised HOPCO that C.K. would not reimburse HOPCO for any operating expenses incurred after November 10, 1997. *Id.* HOPCO continued to operate the leases. *Id.* Additionally, HOPCO filed suit against C.K. to specifically enforce the terms of its contract and sought damages from C.K. as a result of the attempted termination. *Id.* at *2. Those damages included expenses for operating the leases from the date of the purported termination through the date of trial. *Id.* C.K. counterclaimed for trespass, asserting HOPCO was liable to C.K. in tort for refusing to accept C.K.'s breach of the contract. *Id.* The trial court granted a motion by C.K. for partial summary judgment denying specific performance and the remaining issues were tried before a jury. *Id.* The jury found in favor of HOPCO and awarded HOPCO damages that included its expenses incurred in operating the leases after the date of the purported termination. *Id.* On appeal, C.K. argued in part that pursuant to the rule stated in *Osage Oil*, HOPCO was (1) required to accept C.K.'s repudiation and (2) not entitled to recover any damages for expenses incurred in operating the lease after the date of the purported termination. *Id.* at *8, *14. The Eleventh District Court of Appeals in Eastland disagreed with C.K. *Id.* The court stated that the "damage rule" announced in *Osage Oil* "does not apply to affirmative claims for relief which a repudiating party asserts against the non-breaching party for failing to accept the breach." *Id.* at *8. Therefore, the court concluded, HOPCO was "not required to accept C.K.'s repudiation." *Id.* Further, in considering HOPCO's claim for damages, the court stated in part, "For the same reasons that we have rejected the ruling in *Osage Oil* as

–15–

serving as a basis for [C.K.'s] counterclaims sounding in tort, we do not find *Osage Oil* to be controlling on the issue of HOPCO's damages." *Id.* at \*14. The court concluded, "Because the ruling in *Osage Oil* directly conflicts with the non-breaching party's option of treating the repudiation as inoperative, we decline to apply *Osage Oil* to the facts of this case." *Id.*

Unlike the case before us, *C.K. Oil* involved not only a non-repudiating party claiming damages, but also a repudiating party seeking to use the rule in *Osage Oil* to profit from its own breach. *See id.* at \*8. We cannot agree with appellees that the *C.K. Oil* court's conclusion that *Osage Oil* was not controlling on the facts of that case supports appellees' position that *Osage Oil* is inapplicable in the case before us.

*Bumb* involved an employee, John W. Bumb, whose employment contract provided that either he or his employer, InterComp Technologies, L.L.C. ("InterComp"), could terminate their relationship at will by giving ninety days' notice. *Bumb*, 64 S.W.3d at 124. On August 4, 1995, InterComp notified Bumb that his employment was terminated effective November 3, 1995. *Id.* On September 25, 1995, InterComp allegedly told Bumb that it would no longer pay his salary or reimburse him for expenses. *Id.* However, Bumb continued to perform his duties until November 3, 1995. *Id.* On October 12, 1995, Bumb downloaded copies of InterComp software in violation of his employment contract. *Id.* Almost four years later, Bumb filed suit against InterComp for unpaid salary and expenses. *Id.* Intercomp moved for summary judgment, alleging it was excused from further performance under the contract when Bumb breached the contract by downloading software. *Id.* In response, Bumb claimed InterComp breached the contract first by orally repudiating the contract on September 25, 1995, and by failing to pay his salary and expenses on October 1, 1995. *Id.* The trial court granted InterComp's motion for summary judgment. *Id.* at 125. The Fourteenth District Court of Appeals in Houston affirmed, stating "an anticipatory repudiation gives the nonrepudiating party the option to treat the

repudiation as a breach, or ignore it and await the agreed upon time of performance." *Id*. The court reasoned that "by waiting to sue until after InterComp's performance was due, Bumb was obligated to continue performing under the contract, and any breach on his own part prior to the November 3, 1995 termination date excused InterComp from further performance." *Id*. Therefore, the court concluded, Bumb's October 12, 1995 breach barred his suit for any breaches by InterComp thereafter. *Id*. As to breaches by InterComp prior to October 12, 1995, the court observed that the contract provided Bumb's monthly salary was payable "in arrears." *Id*. Thus, payment for Bumb's services during October was not due until November 1, 1995, a date after Bumb's October 12, 1995 breach of contract. *Id*. Further, as to Bumb's claim for expenses, the court observed that the contract required "appropriate support" before expenses would be reimbursed. *Id*. The court stated there was no proof the required support had been provided to Intercomp until a date after Bumb's October 12, 1995 breach. *Id*.

Appellees assert *Bumb* demonstrates that the rule of *Osage Oil* is not currently the law in cases involving contracts for services. However, the court in *Bumb* did not specifically address the issue of whether, when a contract is repudiated, the non-repudiating party can "increase the damages to which he would otherwise be entitled" by continuing to perform. *See Osage Oil*, 230 S.W. at 522. We cannot agree with appellees that *Bumb* supports their position that *Osage Oil* is inapplicable to the case before us.

Finally, in *Avasthi*, Sharma Dronamraju contracted with a petroleum consulting company, Avasthi & Associates, Inc. ("A & A"), to provide geological services for a specific project. *Avasthi*, 2012 WL 6644873 at *1. The contract contained detailed reporting and billing requirements. *Id*. It was undisputed that Dronamraju "never timely complied" with those requirements during the ten-month time period that he worked for A & A. *Id*. at *2. Despite such noncompliance, A & A paid Dronamraju on numerous occasions and continued to request

–17–

him to perform work on the project. *Id.* at *3-4. After the project was completed, A & A informed Dronamraju that certain bills for his time "had been submitted too late" and would not be paid by A & A. *Id.* at *3. Dronamraju filed suit against A & A for breach of contract, seeking payment of his unpaid bills. *Id.* The jury found in favor of Dronamraju. *Id.* at *4. On appeal, A & A argued that as a matter of law, it was excused from performing under the contract, i.e. paying Dronamraju, because of Dronamraju's prior material breach of the same contract, i.e. the failure to timely bill. *Id.* at *6. The First District Court of Appeals in Houston disagreed. *Id.* at *7. The court concluded that by seeking to continue benefiting from the contract by requesting Dronamraju continue performing work, "A & A waived its ability to treat Dronamraju's breach as a justification for non-performance." *Id.* at *8. Unlike the case before us, *Avasthi* did not involve a non-repudiating party seeking to recover damages for breach of contract after continuing performance. *See id.* Therefore, that case is inapposite as to whether *Osage Oil* applies to such a fact situation.

As described above, the Agreement stated JBBI was employing BSF "for the purpose of engaging the full-time services of [Berryman]." A contract for personal services is not specifically enforceable. *See Gage v. Wimberly*, 476 S.W.2d 724, 731 (Tex. Civ. App.—Tyler 1972, writ ref'd n.r.e.); *Chain v. Pye*, 429 S.W.2d 630, 635 (Tex. Civ. App.—Beaumont 1968, writ ref'd n.r.e.). Further, appellees assert in their brief on appeal that "[a]s early as the first half of May of 2008, [a]ppellants altogether ceased performance under the Agreement." The record shows that at that point, the $291,666.67 claimed by appellees as breach of contract damages had not been paid to appellants. Appellees assert they continued to pay appellants in May, June, July, and August of 2008, even though appellants "never resumed performance under the Agreement." Thus, the record shows that absent the continuation of payments by appellees, they would not "otherwise be entitled" to the $291,666.67 they claim as breach of contract damages.

–18–

*See Osage Oil*, 230 S.W. at 522. On this record, we conclude those sums are not recoverable as breach of contract damages. *See id*.; *see also Tower Contracting Co., Inc. v. Flores*, 294 S.W.2d 266, 273 (Tex. Civ. App.—Galveston 1956), *aff'd as modified*, 302 S.W.2d 396 (Tex. 1957) (except in cases where specific performance is proper, non-repudiating party "cannot afterwards go on, and thereby increase the damages, and then recover such damages from the other party"). The record shows no evidence of other breach of contract damages claimed by appellees. Consequently, we conclude appellees did not meet their summary judgment burden as to their breach of contract claim. *See Petras*, 248 S.W.3d at 477; *Barnett*, 123 S.W.3d at 815; *see also* TEX. R. CIV. P. 166a(c).

We decide in favor of appellants on their second issue.[6]

### 2. Money Had and Received

In their third issue, appellants contend "the trial court erred in granting summary judgment on [a]ppellees' claims for money had and received because recovery is barred by the voluntary payment doctrine." Appellees respond in part that this argument fails because appellants did not plead voluntary payment as an affirmative defense and "did not cite evidence to or raise the issue of voluntary payment" in their summary judgment response in the trial court. In their reply brief in this Court, appellants assert in part (1) "[t]he voluntary payment doctrine is an equitable estoppel-based defense," (2) appellants "pled equitable estoppel" in their answer, and (3) "[b]ecause [plaintiffs] failed to specially except to [defendants'] affirmative defenses, asserting a general equitable estoppel defense was sufficient to plead the sub-defense of voluntary payment."

---

[6] In their first issue, appellants contend "the trial court erred in granting summary judgment on [a]ppellees' claim for breach of contract because [a]ppellees failed to conclusively prove causation." In light of our disposition of appellants' second issue, we need not reach appellants' first issue. *See* TEX. R. APP. P. 47.1.

"Money had and received is a category of general assumpsit to restore money where equity and good conscience require refund." *MGA Ins. Co. v. Charles R. Chesnutt, P.C.*, 358 S.W.3d 808, 813 (Tex. App.—Dallas 2012, no pet.); *accord Edwards v. Mid-Continent Office Distribs., L.P.*, 252 S.W.3d 833, 837 (Tex. App.—Dallas 2008, pet. denied). "A cause of action for money had and received is not premised on wrongdoing, but 'looks only to the justice of the case and inquires whether the defendant has received money which rightfully belongs to another.'" *MGA Ins. Co.*, 358 S.W.3d at 813 (quoting *Amoco Prod. Co. v. Smith*, 946 S.W.2d 162, 164 (Tex. App.—El Paso 1997, no writ)). "In short, it is an equitable doctrine applied to prevent unjust enrichment." *Id*. "To prove a claim for money had and received, a plaintiff must show that a defendant holds money which in equity and good conscience belongs to him." *Id*.

Under the voluntary payment rule, "'[m]oney voluntarily paid on a claim of right, with full knowledge of all the facts, in the absence of fraud, deception, duress, or compulsion, cannot be recovered back merely because the party at the time of payment was ignorant of or mistook the law as to his liability.'" *BMG Direct Mktg., Inc. v. Peake*, 178 S.W.3d 763, 768 (Tex. 2005) (quoting *Pennell v. United Ins. Co*., 243 S.W.2d 572, 576 (Tex. 1951)). "The rule is a defense to claims asserting unjust enrichment; that is, when a plaintiff sues for restitution claiming a payment constitutes unjust enrichment, a defendant may respond with the voluntary-payment rule as a defense." *Id*.; *see Miga v. Jensen*, 299 S.W.3d 98, 103 (Tex. 2009) (voluntary payment rule is "a defense to a restitution claim").

The record shows appellants did not assert the voluntary payment rule as a defense or address voluntary payment in their summary judgment response. *See BMG Direct Mktg., Inc.,* 178 S.W.3d at 768; TEX. R. CIV. P. 166a(c). Further, appellants cite no authority, and we have found none, to support their assertion that the voluntary payment rule is a "sub-defense" of a "general equitable estoppel defense." *Cf. Johnson & Higgins of Tex., Inc. v. Kenneco Energy,*

*Inc*., 962 S.W.2d 507, 515–16 (Tex. 1998) ("[T]he doctrine of equitable estoppel requires: (1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) with the intention that it should be acted on; (4) to a party without knowledge or means of obtaining knowledge of the facts; (5) who detrimentally relies on the representations."). We conclude appellants' third issue presents nothing for this Court's review. *See* TEX. R. CIV. P. 166a(c).

We decide against appellants on their third issue.[7]

### 3. Objections to Berryman's Affidavit

Next, we address appellants' ninth issue, in which they assert the trial court "erred in sustaining [a]ppellees' objections to [a]ppellants' summary judgment evidence." Specifically, appellants assert the trial court abused its discretion by sustaining appellees' objections to Berryman's affidavit respecting "improper conclusions and opinions," irrelevant testimony, hearsay testimony, and lack of required attachments.

Appellees respond in part that "[a]ppellants waived any alleged error by failing to address independent and alternative grounds to exclude evidence." Specifically, appellees assert in part that appellants "nowhere address" appellees' (1) supplemental objection "to the entirety of Berryman's affidavit for failing to be based on personal knowledge" and (2) "objections to paragraphs 9, 12, 15, 16, 19, 22, 24, and 28 of Berryman's affidavit as being a sham affidavit that directly contradicted his deposition testimony."

We review a trial court's ruling that sustains an objection to summary judgment evidence for an abuse of discretion. *Cantu v. Horany*, 195 S.W.3d 867, 871 (Tex. App.—Dallas 2006, no pet.); *Bradford Partners II, L.P. v. Fahning*, 231 S.W.3d 513, 521 (Tex. App.—Dallas 2007, no

---

[7] The record shows that in their motion for summary judgment, appellees requested damages of $333,666.63 in connection with plaintiffs' claim for money had and received. Further, the trial court's judgment does not show the damages awarded therein are based on a particular claim. Therefore, the record shows plaintiffs' claim for money had and received, alone, supports the full amount of damages awarded in the judgment.

pet.). "[W]hen an appellee urges several objections to a particular piece of evidence and, on appeal, the appellant complains of its exclusion on only one of those bases, the appellant has waived that issue for appeal because he has not challenged all possible grounds for the trial court's ruling that sustained the objection." *Cantu*, 195 S.W.3d at 871; *see Bradford Partners*, 231 S.W.3d at 521; *Goodenberger v. Ellis*, 343 S.W.3d 536, 540 (Tex. App.—Dallas 2011, pet. denied).

As described above, appellants filed an initial brief and a reply brief in this Court. In those briefs, appellants do not address appellees' objections that portions of Berryman's affidavit constituted a "sham affidavit." Therefore, we conclude appellants have presented no challenge in this Court to the trial court's sustaining of appellees' "sham affidavit" objections respecting paragraphs 9, 12, 15, 16, 19, 22, 24, and 28 of Berryman's affidavit. *See Cantu*, 195 S.W.3d at 871; *Bradford Partners*, 231 S.W.3d at 521.

As to appellees' objection "to the entirety of Berryman's affidavit for failing to be based on personal knowledge," appellants contend in their reply brief in this Court that they "properly addressed [appellees'] personal knowledge arguments, and therefore, did not waive their right to argue against them on appeal." According to appellants, in their initial appellate brief, they (1) "cite to [Berryman's] testimony that he was present during his conversations with [Brinkmann] and certain JBBI employees, and therefore demonstrated he had the personal knowledge regarding what statements were made during those conversations"; (2) "dedicated an entire section of their brief to explaining how the statements of Brinkmann and his employees were not hearsay because the statements constitute admissions by a party opponent"; and (3) explained "how [appellees'] own internal business records were the source of [Berryman's] personal knowledge."

–22–

First, appellants' citations in their initial appellate brief that purportedly show Berryman's "personal knowledge" as to his conversations with Brinkmann and JBBI employees appear in a section of appellants' brief addressing objections to "conclusory statements" of Berryman. The issue of whether Berryman's "personal knowledge" was based on hearsay was not addressed with respect to those statements.

Second, in the portion of appellants' initial appellate brief addressing appellees' hearsay objections, appellants assert appellees are "incorrect" that Berryman's affidavit contained hearsay. Then, appellants contend, "For one, contrary to [appellees'] arguments, the statements of people in [appellees'] accounting department that certain submitted reimbursements had been approved (CR at 712) fall under the hearsay exception for admissions of a party opponent." In support of that contention, appellants cite Texas Rule of Evidence 801(e)(2)(D). *See* TEX. R. EVID. 801(e)(2)(D) (providing hearsay exception for statement by party's agent or servant concerning matter within scope of agency or employment made during existence of relationship). The page of the record specifically cited by appellants, page 712, is a page of Berryman's affidavit that contains paragraphs 26 and 27 and portions of paragraphs 25 and 28. The only statement on that page pertaining to appellees' "accounting department" reads as follows: "Part of my claim for breach of contract based on unreimbursed expenses occurred in 2006 and 2007 as well as 2008. I was assured that these reimbursements had been approved by the accounting department and would be forwarded to me." While rule 801(e)(2)(D) provides a hearsay exception for certain statements by a "party's agent or servant," the page of Berryman's affidavit cited by appellants does not state who "assured" Berryman the reimbursements in question had been approved.[8] *See Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 908 (Tex. 2004)

---

[8] The record shows paragraph 24 of Berryman's affidavit also addressed approval of reimbursements. However, (1) appellants do not cite to paragraph 24 in their appellate argument respecting hearsay and (2) Berryman's statements in paragraph 24 were among those objected to pursuant to the "sham affidavit" objections described above.

(proponent of hearsay has burden to show testimony fits within exception). Appellants do not otherwise cite any "statements of Brinkmann and his employees" that they contend "constitute admissions by a party opponent."

Finally, in the third portion of appellants' initial brief to which they direct this Court, appellants specifically address appellees' objection that Berryman's affidavit should be struck because Berryman did not attach required documents pursuant to Texas Rule of Civil Procedure 166a(f). *See* TEX. R. CIV. P. 166a(f) (providing in part that "[s]worn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto"). Appellants cite the following statement of Berryman in his affidavit:

> I am personally aware of my own actions since 2001, and the damages claimed by [d]efendants in this action. In addition, I have personal knowledge of the facts set forth below based on my direct conversations with [Brinkmann]; employees of [JBBI]; the business records of [JBBI] . . . ; and the business records of [BSF].

Then, appellants argue that because Berryman "simply identified a source from which his personal knowledge was developed" and "does not refer to documents in this paragraph," he "was not required to attach documents." Appellants do not address hearsay in that argument.

Because the trial court could have granted appellees' objections to Berryman's affidavit on grounds not challenged by appellants, we conclude appellants have waived their complaint that the trial court erred by sustaining appellees' objections to their summary judgment evidence. *See Goodenberger*, 343 S.W.3d at 540 (citing *Cantu*, 195 S.W.3d at 871).

We decide appellants' ninth issue against them.

### 4. Appellants' Breach of Contract Counterclaim

Now, we address together appellants' tenth and eleventh issues, in which they assert error by the trial court in granting summary judgment on their counterclaim for "breach of the agreement to reimburse expenses." Specifically, in their tenth issue, appellants assert the evidence "raises material questions of fact as to the existence, terms, and breach" of the

–24–

agreement to reimburse expenses. In their eleventh issue, appellants contend in part that material fact questions exist pertaining to the applicability of the statute of frauds, including whether the agreement to reimburse expenses (1) was an immaterial change to the Agreement, (2) "modified only the one year renewals of the Agreement," (3) "was independent of the Agreement," and (4) is enforceable under the doctrine of partial performance.

Appellees respond that "the statute of frauds bars appellants' expense reimbursement breach of contract claim." Further, appellees argue partial performance does not bar application of the statute of frauds in this case because appellants waived that defense.

Under the statute of frauds, certain contracts are not enforceable unless they are in writing and signed by the person against whom enforcement of the contract is sought. *See* TEX. BUS. & COM. CODE ANN. § 26.01(a) (West 2009); *S & I Mgmt., Inc. v. Sungju Choi*, 331 S.W.3d 849, 854 (Tex. App.—Dallas 2011, no pet.). The party pleading the statute of frauds bears the burden of establishing its applicability. *See Kalmus*, 390 S.W.3d at 589.

The statute of frauds applies to, *inter alia*, "an agreement which is not to be performed within one year from the date of the making of the agreement." TEX. BUS. & COM. CODE ANN. § 26.01(b)(6). When a promise or agreement, either by its terms or by the nature of the required acts, cannot be completed within one year, it falls within the statute of frauds and is unenforceable unless it is in writing and signed by the person to be charged. *See id.* § 26.01(a), (b)(6); *Kalmus*, 390 S.W.3d at 589. If the agreement is capable of being performed within one year, it is not within the statute of frauds. *Kalmus*, 390 S.W.3d at 589 (citing *Gerstacker v. Blum Consulting Eng'rs., Inc.*, 884 S.W.2d 845, 849 (Tex. App.—Dallas 1994, writ denied)). The question of whether an agreement falls within the statute of frauds is one of law. *See Bratcher v. Dozier*, 346 S.W.2d 795, 796 (Tex. 1961); *Biko v. Siemens Corp.*, 246 S.W.3d 148, 159 (Tex. App.—Dallas 2007, pet. denied). However, whether the circumstances of a particular case fall

within an exception to the statute of frauds is generally a question of fact. *See Kalmus*, 390 S.W.3d at 589; *Adams v. Petrade Int'l, Inc.*, 754 S.W.2d 696, 705 (Tex. App.—Houston [1st Dist.] 1988, writ denied).

In deciding whether an agreement is capable of being performed within one year, we compare the date of the agreement to the date when the performance under the agreement is to be completed. *Kalmus*, 390 S.W.3d at 590. If there is a year or more between those two reference points, a writing is required to render the agreement enforceable. *Id.* When the date performance will be completed cannot be readily ascertained, the law provides that if performance could conceivably be completed within one year of the agreement's making, a writing is not required to enforce it. *Id.*; *see also Miller v. Riata Cadillac Co.*, 517 S.W.2d 773, 775 (Tex. 1974) ("If a contract can, from the terms of the agreement, be performed within one year it is not within the Statute of Frauds.").

Under the partial performance exception to the statute of frauds, contracts that have been partly performed, but do not meet the requirements of the statute of frauds, may be enforced in equity if denial of enforcement would amount to a virtual fraud. *Exxon Corp. v. Breezevale Ltd.*, 82 S.W.3d 429, 439 (Tex. App.—Dallas 2002, pet. denied). The partial performance must be unequivocally referable to the agreement and corroborative of the fact that a contract actually was made. *Id.*; *Holloway v. Dekkers*, 380 S.W.3d 315, 324 (Tex. App.—Dallas 2012, no pet.). The performance a party relies on to remove a parol agreement from the statute of frauds "must be such as could have been done with no other design than to fulfill the particular agreement sought to be enforced." *Breezevale*, 82 S.W.3d at 439–40. Without such precision, the acts of performance do not tend to prove the existence of the parol agreement sought to be enforced. *Id.* at 440.

First, we address appellants' argument in their eleventh issue that the alleged agreement to reimburse expenses "modified only the one year renewals of the Agreement" and therefore was not barred by the statute of frauds. Appellants contend "[e]ven if the statute of frauds initially applied to the expense reimbursement agreement as a modification of the 2001 Agreement, an agreement to reimburse expenses can be implied regarding the one year renewals of the 2001 Agreement that would not be barred by the statute of frauds." According to appellants, (1) "[o]nce the initial term of the 2001 Agreement expired, and it automatically renewed on an annual basis, it was no longer covered by the statute of frauds because it was capable of being performed within a year" and (2) "[l]ikewise, the modification of the 2001 Agreement to allow for expense reimbursement would not be covered by the Statute of Frauds." In support of their argument, appellants cite *Garcia v. Karam*, 276 S.W.2d 255, 257 (Tex. 1955), for the statement that "[i]f neither the portion of the written contract affected by the subsequent modification nor the matter encompassed by the modification itself is required by the Statute of Frauds to be in writing, then the oral modification will not render the contract unenforceable." Additionally, appellants cite *Miller* for the statement that "contracts that can be performed within one year are not within the Statute of Frauds." *Miller*, 517 S.W.2d at 775.

*Garcia* involved a purchaser's action for a seller's alleged breach of a written contract for the sale of realty. *Garcia*, 276 S.W.2d at 256; *see also* TEX. BUS. & COM. CODE ANN. § 26.01 (b)(4) (providing contract for sale of real estate is within statute of frauds). The contract provided that $20,000 of the purchase price was to be paid by merchandise. *Garcia*, 276 S.W.2d at 256. Subsequent to executing the written contract, the parties orally agreed that the seller would accept the merchandise without the necessity of taking inventory. *Id.* The purchaser later filed and prevailed in a suit to enforce the contract as modified by the oral agreement. *Id.* On appeal to the supreme court, the seller contended the oral modification of the contract was

prohibited by the statute of frauds because it amounted to a "complete change" of the terms of the contract between the parties and was an attempt to "substitute an entirely new consideration" for the one required by the writing. *Id*. The supreme court reasoned, "Had the [plaintiff] contracted in writing for the sale of his merchandise for '$20,000.00, at invoice', and subsequently agreed orally with the [defendant] to convey without an inventory, the Statute of Frauds would have been wholly inapplicable." *Id*. at 257. The court stated that the oral modification did not change the "subject matter of the contract," but "only the method of performing it." *Id*. Therefore, the court concluded, the subsequent oral modification of the written contract was valid. *Id*.

In *Miller*, Kenneth F. Miller was employed by Riata Cadillac Co. as a used car manager pursuant to an oral contract. *Miller*, 517 S.W.2d at 774. Miller was terminated after approximately three and one-half years and filed suit against Riata to enforce the alleged terms of the oral contract. *Id*. Riata argued the contract was an unenforceable contract within the statute of frauds. *Id*. On appeal, the supreme court concluded in part that because it was undisputed that the contract was an "indefinite term employment contract," it was considered performable in one year and therefore was not within the statute of frauds. *Id*. at 776.

Unlike the case before us, neither *Garcia* nor *Miller* involved a contract with an initial term longer than one year followed by automatic annual renewals. Further, neither case discussed application of the statute of frauds to such a contract. Therefore, we do not find those cases instructive. Appellants cite no other authority, and we have found none, to support their position that "[o]nce the initial term of the 2001 Agreement expired, . . . it was no longer covered by the statute of frauds because it was capable of being performed within a year." *Cf. Hampton v. Lum*, 544 S.W.2d 839, 841 (Tex. Civ. App.—Texarkana 1976, no writ) (construing lease as

"demise for twenty-four months" where lease provided for one-year period that automatically renewed for another year in the absence of notice).

As described above, the record shows the Agreement stated it was for "a term of five years starting August 1, 2001 and is to be renewed annually thereafter unless either parties [sic] gives notice in writing 90 days prior to the end of any anniversary date." Additionally, the record shows (1) Berryman testified in part in his deposition that at approximately the same time the Agreement was executed in 2001, he and JBBI entered into an oral agreement that Berryman's business expenses would be reimbursed by JBBI and (2) Brinkmann testified JBBI reimbursed Berryman for various expenses starting in 2001 and continuing until at least 2006. We cannot agree with appellants that there is evidence in the record that the alleged modification of the 2001 Agreement to allow for expense reimbursement was capable of being performed within one year.

Second, we address appellants' assertion in their eleventh issue that the statute of frauds does not bar the modification in question because it was "an immaterial change to the Agreement." According to appellants, the statute of frauds is applicable to the modification in this case only if "the modification materially effects the obligations of the underlying agreement." In support of that position, appellants cite a case involving an oral modification to reduce a real estate brokerage commission in a contract to sell real estate. *See Am. Garment Props., Inc. v. CB Richard Ellis-El Paso, L.L.C.*, 155 S.W.3d 431, 437 (Tex. App.—El Paso 2004, no pet.). However, we concluded above that the alleged modification of the 2001 Agreement to allow for expense reimbursement was not capable of being performed within one year. Appellants cite no authority, and we have found none, to support the position that a modification not capable of being performed within one year falls outside the statute of frauds if it constitutes an "immaterial change" to the original contract. *See* TEX. BUS. & COM. CODE ANN.

–29–

§ 26.01(b)(6). We cannot agree with appellants that the materiality of the modification in question has any bearing on the application of the statute of frauds in this case.

Third, appellants contend in their eleventh issue that "[e]ven if the statute of frauds applies to modifications of the 2001 Agreement, the expense reimbursement agreement alternatively should be viewed not as a direct modification of the 2001 Agreement, but rather as independent of the 2001 Agreement." According to appellants, because there is no time period fixed for performing the "independent" expense reimbursement agreement, "it must be treated as capable of being performed within a year." Therefore, appellants assert, "if the expense reimbursement agreement is independent of the 2001 Agreement, the statute of frauds would not bar its enforcement."

Appellees contend appellants pleaded and argued in the trial court that "there was an oral *modification* of the written Agreement." (emphasis original). According to appellees, appellants did not assert in the trial court that "the expense reimbursement agreement was a stand alone agreement" and therefore appellants cannot make that contention for the first time on appeal. Further, appellees argue, "even if such an agreement existed, it could not have been performed within one year because it would necessarily correlate to the five (5) year term of the Agreement."

The record shows appellants asserted in their amended response to the motion for summary judgment that the agreement to pay expenses was an "oral modification" of the Agreement and/or an "implied in fact modification." Appellants did not argue in the trial court that "the expense reimbursement agreement is independent of the 2001 Agreement." Consequently, that argument presents nothing for this Court's review. *See* TEX. R. CIV. P. 166a(c); *McConnel*, 858 S.W.2d at 343; *Clear Creek Basin Auth.*, 589 S.W.2d at 676–77.

Fourth, we address appellants' argument that the partial performance exception to the statute of frauds applies in this case. The record shows that in their amended response to appellees' motion for summary judgment in the trial court, appellants asserted "part performance by the parties takes the Agreement outside the statute of frauds." In a footnote to that statement, appellants cited the portion of *Breezevale* that states the law described above respecting partial performance. *See* 82 S.W.3d at 439. Appellants' argument as to "part performance" in the trial court contained no other statements, analysis, or citations to authority or to the record.

"[A] party submitting summary judgment evidence 'must specifically identify the supporting proof on file that it seeks to have considered by the trial court.'" *Bich Ngoc Nguyen v. Allstate Ins. Co*., 404 S.W.3d 770, 776 (Tex. App.—Dallas 2013, pet. denied) (quoting *Arredondo v. Rodriguez*, 198 S.W.3d 236, 238 (Tex. App.—San Antonio 2006, no pet.)). On this record, we conclude the trial court did not err by concluding appellants did not satisfy their burden to raise a fact issue as to partial performance. *See id*. at 777; *see also MGA Ins. Co.*, 358 S.W.3d at 815; TEX. R. CIV. P. 166a(i).

Based on the preceding analysis, we conclude the trial court did not err by concluding the requirements of the statute of frauds apply to the alleged agreement to reimburse expenses. TEX. BUS. & COM. CODE ANN. § 26.01(a), (b)(6). We decide against appellants on their eleventh issue.

In their tenth issue, appellants assert that even if the trial court properly excluded Berryman's affidavit, the remaining evidence in the record "raises material questions of fact as to the existence, terms, and breach" of the agreement to reimburse expenses. In a footnote to their appellate argument on this issue, appellants contend appellees "err in assuming that the expense reimbursement agreement must have been in writing." However, we concluded above that the trial court did not err by concluding the expense reimbursement agreement was within the statute

of frauds. *See id.* Because the record does not show the expense reimbursement agreement was in writing and signed by the party to be charged, that agreement is unenforceable. *Id.* Consequently, the evidence described by appellants has no bearing on whether the trial court erred in granting summary judgment respecting the agreement to reimburse expenses.

We decide appellants' tenth issue against them.

### 5. Declaratory Judgment

Chapter 37 of the Texas Civil Practice and Remedies Code is titled "Declaratory Judgments." *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 37.001–37.011 (West 2008). Section 37.004 of that chapter provides in part

> A person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

*Id.* § 37.004(a).

We review declaratory judgments under the same standards as other judgments. *Id.* § 37.010; *Lidawi v. Progressive Cnty. Mut. Ins. Co.*, 112 S.W.3d 725, 730 (Tex. App.—Houston [14th Dist.] 2003, no pet.). We look to the procedure used to resolve the issue at trial to determine the standard of review on appeal. *Lidawi*, 112 S.W.3d at 730. Thus, in the case before us, we review the propriety of the trial court's declaratory judgment under the same standards we apply to a summary judgment. *Id.*

### a. Redundancy

In their fourth issue, appellants assert "the trial court erred in granting summary judgment on [a]ppellees' declaratory judgment claim because declaratory relief was redundant with [a]ppellees' breach of contract claim and therefore barred as a matter of law." Appellees respond in part that "[a]ppellants did not object or otherwise argue to the trial court that declaratory relief

–32–

was 'merely redundant or duplicative' of [a]ppellees' other claims" and "cannot do so for the first time on appeal." Appellants argue in their reply brief in this Court that their complaint respecting the redundancy of the declaratory judgment claim was not "waived" by their failure to object at the trial level because (1) "[a] failure to object is not waiver when error is apparent from the face of the record" and (2) "it is apparent from the face of the record that [plaintiffs'] breach of contract and declaratory judgment claims involve the same issues and resolution of one adds nothing to the other."

In support of their argument that their failure to object did not constitute "waiver," appellants cite *Coastal Transport Co., Inc*. *See* 136 S.W.3d at 233. However, unlike the case before us, that case involved a no-evidence challenge asserted for the first time on appeal. The supreme court concluded in that case that when such a challenge is "restricted to the face of the record (for example, when expert testimony is speculative or conclusory on its face)," a party "may challenge the legal sufficiency of the evidence even in the absence of any objection to its admissibility." In the case before us, appellants do not explain, and the record does not show, how their complaint respecting redundancy is a challenge to the legal sufficiency of the evidence.

On this record, we conclude appellants' fourth issue presents nothing for this Court's review. *See* TEX. R. CIV. P. 166a(c); *cf. Narisi v. Legend Diversified Inv*., 715 S.W.2d 49, 51–52 (Tex. App.—Dallas 1986, writ ref'd n.r.e.) (rejecting argument that declaratory judgment counterclaim was redundant where issue was not raised until after judgment was signed); *City of Dallas/DISD v. US W. Fin. Servs., Inc.*, No. 05-92-01106-CV, 1993 WL 147262, at *5 (Tex. App.—Dallas Apr. 27, 1993, no writ) (not designated for publication) (declining to consider complaint that declaratory judgment claim was "duplicative" as grounds for reversal of summary judgment because such issue was not raised in trial court).

We decide against appellants on their fourth issue.

### b. Fact Questions Respecting Trial Court's Declarations

In their fifth and sixth issues, appellants contend the trial court erred in granting summary judgment on appellees' declaratory judgment claim because fact questions exist (1) "as to the trial court's declarations" and (2) "concerning whether [a]ppellees' conduct excused further performance by [a]ppellants."[9]

First, we consider appellants' assertion in their sixth issue that "any breach by [appellants] was excused by [appellees'] conduct." In support of their argument, appellants cite the general rule that "performance is excused when a party to a contract prevents the other from performing." *See O'Shea v. Int'l Bus. Mach. Corp.*, 578 S.W.2d 844, 846 (Tex. Civ. App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.). Appellants contend that "[u]nder this general rule, actions of [appellees] that undermined or interfered with [appellants'] ability to sell or market products excused any alleged breach of such duties because such actions prevented performance." Additionally, appellants cite *O'Shea* in support of their position that "[a]ny question of fact as to whether [appellees] interfered with [appellants'] performance would preclude summary judgment."

Appellees respond in part that appellants "cite no authority for the proposition that 'undermining' or 'interfering' are the equivalent of preventing performance." Further, appellees argue the trial court "properly disposed of appellants' attempt to excuse their breach as a matter of law" because "[a]ppellees presented to the trial court undisputed evidence that [a]ppellants were at all times able to perform despite the actions [a]ppellants want to complain about."

---

[9] Additionally, appellants assert in part in their sixth issue that summary judgment on appellees' breach of contract claim was precluded by fact issues respecting whether appellants' performance was excused. However, we concluded in our analysis pertaining to issue two above that the trial court erred by granting summary judgment in favor of appellees on their breach of contract claim. Therefore, we need not address the portion of appellants' sixth issue pertaining to appellees' breach of contract claim.

–34–

The court in *O'Shea* did not address the question of whether evidence that a party "interfered" with performance constitutes evidence that performance was prevented. *See* 578 S.W.2d at 846. Appellants cite no other authority, and we have found none, in support of their position that "[a]ny question of fact as to whether [appellees] interfered with [appellants'] performance would preclude summary judgment." In support of their argument that the evidence raises a fact question as to whether appellants' performance of the Agreement was "prevented," appellants cite portions of (1) Berryman's affidavit and (2) the depositions of Berryman and Brinkmann. We concluded above that the trial court did not err by sustaining appellees' objection to Berryman's affidavit. Therefore, we do not consider that affidavit in our analysis. The excerpts from Berryman's deposition cited by appellants include Berryman's testimony that (1) during two separate meetings in 2006 and 2008, Brinkmann stated in front of retailers' representatives that Berryman "didn't work" and buyers did not want to do business with Berryman; (2) in approximately April 2008, JBBI hired Mike Bush; and (3) at the time Bush was hired, Bush told Berryman that Berryman was "being replaced" by Bush. Additionally, appellants cite deposition testimony of Brinkmann respecting the hiring of Bush.

The record shows Berryman testified in his deposition that he was still able to perform his duties under the Agreement after the negative comments made by Brinkmann in 2006 and 2008. Therefore, we cannot conclude those comments prevented Berryman's performance. In their reply brief in this Court, appellants assert that even if the "defamatory statements" of Brinkmann did not prevent performance, appellees "wholly frustrated [appellants'] ability to perform" because they "effectively eliminated [Berryman's] position" by hiring Bush and "wresting away [Berryman's] authority to act on his accounts." However, the deposition testimony cited by appellants does not show Berryman's performance was prevented by the hiring of Bush. Further, Berryman testified in his deposition that he was not replaced by Bush.

On this record, we cannot conclude the evidence raises a fact question as to whether appellants' performance of the Agreement was "excused."

We decide against appellants on their sixth issue.

As to the trial court's four declarations in the judgment, all are challenged by appellants. However, in light of our conclusions above, appellants' arguments respecting the trial court's declaration "c" need not be addressed.[10] Consequently, we address only appellants' challenges respecting the following declarations:

> a. Defendants ceased performing under the Agreement in, at least, May of 2008 when Berryman refused to fulfill his duties and obligations for Plaintiffs. This constituted a material breach of the Agreement. The Agreement was at a minimum terminable from that point forward by Plaintiffs, and after making every reasonable effort to communicate with Berryman, Plaintiffs lawfully terminated the Agreement in August 2008. Thus, no further obligations are owed or due to Defendants under the Agreement.
>
> b. Notwithstanding Plaintiffs' lawful termination of the Agreement, the Agreement expired on August 1, 2008. The Agreement provides for automatic renewal upon the anniversary date of the contract only if neither party provides written notice to the other party to the contrary. Here, Defendants' Agreement Termination Letter was received by Plaintiffs in May of 2008, and the Agreement expired by its own terms on August 1, 2008 as a result.
> . . . .
> d. JBBI did not, constructively or otherwise, breach the Agreement.

With respect to declaration "a," appellants argue they "presented evidence that the 2001 Agreement had already been constructively terminated by [appellees'] conduct that undermined and interfered with [appellants'] performance of the contract." According to appellants, "[t]his evidence raised a fact question as to whether [appellees] breached the agreement, which should have prevented the trial court from entering summary judgment and making the above declaration."

---

[10] Specifically, appellants contend the trial court's declaration "c" was issued in error because "[t]he existence of fact questions surrounding the partial performance doctrine and the modification of the 2001 Agreement's one year extensions prevented [appellees] from conclusively proving that the oral agreements [to reimburse expenses] were not part of the 2001 Agreement." We concluded in the analysis above pertaining to issue eleven that the trial court did not err by concluding no fact questions existed as to partial performance and "modification of the 2001 Agreement's one year extensions."

Appellees respond in part that appellants' argument respecting "constructive termination" is waived because appellants "do not cite or analyze any cases in alleged support of their contention that constructive termination principles apply in non-employment contract cases or, if such did apply, connecting evidence to elements of constructive termination to demonstrate the existence of a fact issue." Additionally, appellees contend "[t]he evidence is uncontroverted that working conditions did not force [a]ppellants to stop performing, and that [a]ppellants did not 'resign' or stop performance when the alleged offending incidents occurred, such being requirements of a constructive discharge claim in the employment context."

In their reply brief in this Court, appellants contend appellees' allegations of "waiver" fail for two reasons. First, appellants assert appellees "misunderstand the point" of appellants' argument. Specifically, appellants assert "[t]he 'constructive termination' language was loosely used to argue that [appellees] breached before [appellants'] alleged breach, and therefore, the further performance by [appellants] was excused." Appellants contend they "presented summary judgment evidence that [appellees] breached before [May 2008] by engaging in conduct that undermined and interfered with [appellants'] performance of the contract." In support of that assertion, appellants cite the same evidence cited by them in their argument pertaining to prevention of performance in their sixth issue above. To the extent appellants assert an argument distinct from their argument pertaining to their sixth issue, appellants do not provide analysis or authority for such argument. Therefore, such argument presents nothing for this Court's review. *See* TEX. R. APP. P. 38.1(i). Second, appellants assert in their reply brief that "there is no merit to [appellees'] contention that 'constructive termination' is a concept limited to application in the employment context." According to appellants, "constructive termination is a concept that is recognized in many types of relationships." In support of that assertion, appellants cite cases that purportedly relate to constructive termination in the contexts of franchise agreements, licensing

–37–

agreements, and leases. However, appellants do not address the elements of constructive termination in their briefs in this Court or explain how appellees' alleged conduct in question constituted constructive termination. Consequently, we conclude appellants' argument respecting constructive termination presents nothing for this Court's review. [11] *See* TEX. R. CIV. P. 38.1(i).

As to declaration "d," appellants contend that declaration was issued in error because appellants "presented evidence that raised a fact question as to [appellees'] breach of the 2001 Agreement by undermining and interfering with [appellants'] performance." In support of that argument, appellants cite to their analysis pertaining to their sixth issue and the evidence cited therein. However, again, to the extent appellants assert an argument distinct from their argument pertaining to their sixth issue, appellants do not provide analysis or authority for such argument and therefore present nothing for this Court's review. *See* TEX. R. APP. P. 38.1(i).

As to the trial court's declaration "b," appellants contend they presented evidence that raises fact questions as to the termination of the Agreement. Specifically, appellants assert

> [T]he evidence shows that the termination provision requires 90 days' notice for any termination. Otherwise the 2001 Agreement automatically renews. It is undisputed that 90 days' notice was not provided by either party. Thus, under the express terms of the 2001 Agreement no termination occurred. At the very least, a fact question exists that should have prevented the trial court from making this declaration.

(citations to record omitted).

Appellees respond in part that because appellants "cite and analyze no cases for their position that the Agreement did not expire in August 2008 as determined," that argument is waived. Additionally, appellees assert (1) "[a]ppellants' Termination Letter sent 72 days prior to renewal when coupled with [a]ppellants' failure to resume performance of the Agreement

---

[11] In oral argument before this Court, counsel for appellants asserted the Agreement was terminated according to its terms on August 29, 2008.

precluded automatic renewal as [a]ppellees under such circumstances are not obligated to require [a]ppellants to comply with the Agreement's notice provision"; (2) [a]ppellants' breach precluded the Agreement's renewal"; and (3) "[n]o fact questions could exist on this point in any event" because "[t]he meaning of contract language is a question of law for the court." In support of their argument, appellees cite cases pertaining to waiver of contract provisions and cessation of performance due to breach. *See Long Trusts v. Griffin*, 222 S.W.3d 412, 415–16 (Tex. 2006); *Guzman v. Ugly Duckling Car Sales of Tex., L.L.P.*, 63 S.W.3d 522, 528 (Tex. App.—San Antonio 2001, pet. denied); *Roma Indep. Sch. Dist. v. Ewing Constr. Co.*, No. 04-12-00035-CV, 2012 WL 3025927, at *2 (Tex. App.—San Antonio July 25, 2012, no pet.) (mem. op.); *Atkinson v. Saddlewood Partners I, Ltd.*, No. 04-98-00681-CV, 1999 WL 371285, at *4 (Tex. App.—San Antonio June 9, 1999, pet. denied) (not designated for publication).

In their reply brief in this Court, appellants contend in part that "[n]o case law is necessary" to resolve this issue in their favor because "it is apparent on the face of the record that no evidence supports the trial court's declaration that 'the Agreement expired by its own terms on August 1, 2008.'"

Because appellants' argument is based on the language of the Agreement, we cannot agree with appellees that appellants waived this argument by not citing case law. Further, the cases cited by appellees in support of their argument do not involve compliance with a contract provision respecting notice that precludes automatic renewal of the contract. Therefore, we do not find those cases instructive.

The record shows paragraph three of the Agreement stated in part, "This Agreement is for a term of five years starting August 1, 2001 and is to be renewed annually thereafter unless either parties [sic] gives notice in writing 90 days prior to the end of any anniversary date." Berryman's letter alleging he had been "constructively terminated" was dated May 20, 2008,

which the parties do not dispute is less than ninety days prior to August 1, 2008. Thus, while the trial court's statement that "Defendants' Agreement Termination Letter was received by Plaintiffs in May of 2008" is not incorrect, we cannot agree that "the Agreement expired by its own terms on August 1, 2008 as a result." We conclude no evidence supports the trial court's declaration "b."

We decide in favor of appellants on the portion of their fifth issue respecting the trial court's declaration "b." Appellants' fifth issue is otherwise decided against them. We reverse declaration "b" of the trial court's judgment and render judgment denying summary judgment as to that declaration.

However, the record shows (1) the summary judgment in question was sought and granted on multiple grounds and (2) declaration "b" is immaterial to summary judgment as prayed for by appellees on the ground of money had and received and declarations "a," "c," and "d." Therefore, the trial court's error respecting declaration "b" does not necessitate reversal of the entirety of the trial court's summary judgment. *See Zimmerhanzel*, 346 S.W.3d at 724; *see also* TEX. R. APP. P. 44.1.

6. Attorneys' Fees

In their seventh issue, appellants assert in part "the trial court erred in awarding [a]ppellees attorneys' fees when [a]ppellees failed to conclusively prove the reasonableness and necessity of the claimed fees by not segregating fees incurred for work on causes of action for which such fees are permitted, from causes of action for which such fees are barred."[12] According to appellants, (1) "because [appellees'] cause of action for breach of contract fails, the trial court's award of attorneys' fees cannot be based on that action," (2) "[i]t is undisputed that

---

[12] Additionally, appellants contend in their seventh issue that "[a]ppellees' redundant declaratory judgment action was used simply to pave a way to attorney fees." As described above, appellants' arguments respecting the redundancy of the declaratory judgment action were not raised below and present nothing for this Court's review.

[appellees] presented no evidence segregating the fees incurred in pursuing their claims," and (3) no attempt was made to segregate attorneys' fees incurred in pursuing third-party claims asserted by Brinkmann, individually, that were later nonsuited.

Appellees contend appellants "waived any complaint" respecting segregation of attorneys' fees because they "did not object to [a]ppellees' attorneys' fees evidence or provide controverting evidence." Further, appellees argue, counsel for appellees testified to the trial court "in great detail" in his affidavit, "including segregating 15 percent of the attorney's fees incurred."

Texas law does not allow recovery of attorneys' fees unless authorized by statute or contract. *See, e.g., Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310 (Tex. 2006). A person may recover reasonable attorneys' fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for an oral or written contract. TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8); *see Ashford Partners, Ltd. v. ECO Res., Inc.*, 401 S.W.3d 35, 40 (Tex. 2012) ("[T]o qualify for fees under [section 38.001(8)], a litigant must prevail on a breach of contract claim and recover damages."). Additionally, under section 37.009 of the civil practice and remedies code, the trial court in a declaratory judgment proceeding may award "reasonable and necessary attorney's fees as are equitable and just." TEX. CIV. PRAC. & REM. CODE ANN. § 37.009; *see also Jarvis v. Rocanville Corp.*, 298 S.W.3d 305, 317 (Tex. App.—Dallas 2009, pet. denied).

If any attorneys' fees relate solely to a claim for which such fees are unrecoverable, a claimant must segregate recoverable from unrecoverable fees. *Tony Gullo Motors*, 212 S.W.3d at 313. "[I]t is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated." *Id*. at 313–14. This standard does not require more precise proof for attorneys' fees than for any other claims or

expense. *Id.* at 314. "[T]o meet a party's burden to segregate its attorneys' fees, it is sufficient to submit to the fact-finder testimony from a party's attorney concerning the percentage of hours that related solely to a claim for which fees are not recoverable." *RM Crowe Prop. Servs. Co., L.P. v. Strategic Energy, L.L.C.*, 348 S.W.3d 444, 453 (Tex. App.—Dallas 2011, no pet.); *see CA Partners v. Spears*, 274 S.W.3d 51, 82 (Tex. App.—Houston [14th Dist.] 2008, pet. denied).

We concluded above that the trial court erred by granting summary judgment on plaintiffs' breach of contract claim. Therefore, attorneys' fees based on that cause of action cannot be recovered. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8). However, as described above, appellants' issues pertaining to declarations "a," "c," and "d" in the final judgment are decided against them in this appeal. Therefore, a basis for recovery of attorneys' fees remains. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009.

The record shows that in an affidavit in the appendix to appellees' motion for summary judgment, counsel for appellees testified in part (1) at least 85%, or $127,073, of the attorneys' fees and paralegal fees incurred by plaintiffs so far "are recoverable against the [d]efendants in this lawsuit"; (2) "it is reasonable to conclude that [plaintiffs'] counsel's activities cannot all be segregated by task and as such are dependent on the same or similar sets of facts and circumstances, are part of many of the same tasks, and are therefore so intertwined that they cannot be so separated or segregated" (3) a fair estimate of additional attorneys' fees likely be incurred by plaintiffs through the hearing on plaintiffs' motion for summary judgment to advance plaintiffs' "affirmative claims" against defendants is at least $33,875; and (4) in the event of appeal respecting plaintiffs' "affirmative claims," plaintiffs will likely incur at least an additional $35,000 in fees in defense of an appeal to the Dallas Court of Appeals, $20,000 in fees in briefing an appeal to the Texas Supreme Court, and $15,000 in fees if the Texas Supreme Court grants a hearing on such appeal. Appellants did not object to this evidence or provide

controverting evidence respecting segregation of attorneys' fees. On this record, we conclude appellees met their burden as to segregation of attorneys' fees. *See Tony Gullo Motors*, 212 S.W.3d at 313–14; *RM Crowe Prop. Servs. Co., L.P.*, 348 S.W.3d at 453; *see also Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 389 (Tex. 1997) ("if no one objects to the fact that the attorney's fees are not segregated as to specific claims, then the objection is waived").

We decide against appellants on their seventh issue.[13]

### 7. Damages, Attorneys' Fees, Costs, and Interest Awarded to Brinkmann

Lastly, in their eighth issue, appellants contend "the trial court erred in entering judgment in favor of [Brinkmann], individually, when he did not recover on any cause of action." Appellants assert that at the time the final judgment was entered, Brinkmann "was not a party to the affirmative causes of action on which judgment was entered." According to appellants, "[t]he trial court's judgment must be reversed because it awarded damages, attorneys' fees, costs and interest to an individual who was not a party to any cause of action on which those amounts were awarded."

Appellees "agree that the final judgment should be modified so Brinkmann individually is removed from the award of damages or fees because he never requested that relief." Specifically, appellees contend in a footnote in their appellate brief

> The Final Judgment provides for recovery of damages and fees to "Movants" collectively, which was a defined term that included both Plaintiffs/Appellees as well as Third Party Defendant/Brinkmann individually. Brinkmann was not a party to the Agreement, or any alleged oral agreements with Appellants and did not assert breach of Agreement or declaratory judgment claims in any pleading or

---

[13] This Court has stated that "after a declaratory judgment is reversed on appeal, an award of attorneys' fees may no longer be equitable and just." *SAVA gumarska in kemijska industria d.d. v. Advanced Polymer Sciences, Inc.,* 128 S.W.3d 304, 324 (Tex. App.—Dallas 2004, no pet.). "Therefore, when we reverse a declaratory judgment and the trial court awarded attorneys' fees to the party who prevailed at trial, we may remand the attorneys' fee award for reconsideration in light of our disposition on appeal." *Id.* "We are not required to do so, however." *Id.; see City of Temple v. Taylor*, 268 S.W.3d 852, 858 (Tex. App.—Austin 2008, pet. denied). In the case before us, the outcome in the trial court as to the declaratory judgment is not substantially affected by our conclusions above. Therefore, we conclude reconsideration of attorneys' fees is not warranted in this case. *See Advanced Polymer Sciences, Inc.*, 128 S.W.3d at 324; *Taylor*, 268 S.W.3d at 858; *cf. Funes v. Villatoro*, 352 S.W.3d 200, 217 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (where reversal of portion of declaratory relief "substantially affects" trial court's judgment, remand as to attorneys' fees is warranted).

as a part of Appellees' and Brinkmann's summary judgment motion. Appellants' third party claims of defamation and business disparagement asserted against Appellees and Brinkmann were dismissed by the trial court and not raised on appeal. Brinkmann non-suited his affirmative claims against Appellants.

(citations to record omitted).[14] However, appellees assert, "[a]ppellants' desire to reverse the entire judgment due to this correctable inadvertent drafting error is not authorized or required." According to appellees, "[a]ppellants' request beyond deleting the award of damages and fees to Brinkmann individually should be denied."

Under rule 559 of the Texas Rules of Civil Procedure, "[t]he successful party in the suit shall recover his costs, except in cases where it is otherwise expressly provided." *See* TEX. R. CIV. P. 559. Further, section 304.003(a) of the Texas Finance Code provides in part that "[a] money judgment of a court of this state . . . , including court costs awarded in the judgment and prejudgment interest, if any, earns postjudgment interest at the rate determined under this section." TEX. FIN. CODE ANN. § 304.003(a) (West 2006); *see Dallas Cnty., Tex. v. Crestview Corners Car Wash*, 370 S.W.3d 25, 50 (Tex. App.—Dallas 2012, pet. denied) (postjudgment interest accrues on entire amount of final judgment, including court costs and prejudgment interest, from date of judgment until paid).

The record shows that at the time the final judgment in this case was signed, Brinkmann was a third-party defendant as to appellants' claims for business disparagement, defamation, and exemplary damages and had requested costs of court respecting those claims in his answer in the trial court. The trial court granted summary judgment against appellants on those claims and those claims were dismissed and not raised on appeal. However, the record also shows (1) Brinkmann was not a party to the affirmative causes of action on which judgment was rendered,

---

[14] With respect to the "affirmative claims" of Brinkmann described by appellees, the record shows that after Brinkmann was named as a third-party defendant, he asserted several claims not relevant to this appeal against appellants in the trial court, then nonsuited those claims prior to the time the trial court's judgment was rendered.

i.e. breach of contract, money had and received, and declaratory judgment and (2) the trial court's awards of damages, attorneys' fees, and prejudgment interest pertain to those claims. Accordingly, we conclude all recoveries in favor of Brinkmann except costs of court and interest on such costs cannot stand.[15] *See* TEX. R. CIV. P. 301 (judgment of trial court shall conform to pleadings).

We reverse the portions of the trial court's judgment (1) granting summary judgment in favor of Brinkmann on the claims asserted by JBBI and TBC for breach of contract, money had and received, and declaratory judgment and (2) awarding Brinkmann damages, attorneys' fees, prejudgment interest, and postjudgment interest on items other than costs of court. Additionally, we render judgment omitting Brinkmann from (1) the portion of the summary judgment respecting the claims asserted by JBBI and TBC for breach of contract, money had and received, and declaratory judgment and (2) the award of damages, attorneys' fees, prejudgment interest, and postjudgment interest on items other than costs of court. *See* TEX. R. APP. P. 43.2(c) (providing appellate court may reverse trial court's judgment in part and render judgment trial court should have rendered). Appellants' eighth issue is otherwise decided against them.

### III. CONCLUSION

We decide in favor of appellants on their second issue and portions of their fifth and eighth issues. We need not reach appellants' first issue. Appellants' remaining issues are decided against them.

We reverse the trial court's judgment, in part, as to (1) declaration "b"; (2) summary judgment on the breach of contract claim asserted by JBBI and TBC; (3) summary judgment in favor of Brinkmann on the claims asserted by JBBI and TBC for money had and received and

---

[15] The trial court's judgment provided in part that "Movants shall recover from Defendants, jointly and severally, all costs of court incurred and filed with the Court in this action." The record does not show the parties raised or addressed apportionment of costs in the trial court, nor is apportionment of costs raised or addressed on appeal.

declaratory judgment; and (4) the award to Brinkmann of damages, attorneys' fees, prejudgment interest, and postjudgment interest on items other than costs of court. We render judgment (1) denying summary judgment as to declaration "b" and the breach of contract claim asserted by JBBI and TBC and (2) modifying the judgment to omit Brinkmann from the parties granted summary judgment on the affirmative claims asserted by JBBI and TBC and from the trial court's award of damages, attorneys' fees, prejudgment interest, and postjudgment interest on items other than costs of court. The trial court's judgment is otherwise affirmed.

120492F.P05

/s/ Douglas Lang
DOUGLAS S. LANG
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

BERRYMAN'S SOUTH FORK, INC. AND
RICHARD BERRYMAN, Appellants

No. 05-12-00492-CV  V.

J. BAXTER BRINKMANN
INTERNATIONAL CORPORATION, THE
BRINKMANN CORPORATION, AND J.
BAXTER BRINKMANN, Appellees

On Appeal from the 192nd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. 08-05771.
Opinion delivered by Justice Lang.   Justices
FitzGerald and Myers participating.

In accordance with this Court's opinion of this date, we **REVERSE** the trial court's judgment, in part, as to (1) declaration "b"; (2) summary judgment on the breach of contract claim asserted by appellees J. Baxter Brinkmann International Corporation and The Brinkmann Corporation; (3) summary judgment in favor of appellee J. Baxter Brinkmann on the claims asserted by J. Baxter Brinkmann International Corporation and The Brinkmann Corporation for money had and received and declaratory judgment; and (4) the award to J. Baxter Brinkmann of damages, attorneys' fees, prejudgment interest, and postjudgment interest on items other than costs of court.  We **RENDER** judgment (1) denying summary judgment as to declaration "b" and the breach of contract claim asserted by J. Baxter Brinkmann International Corporation and The Brinkmann Corporation and (2) modifying the judgment to omit J. Baxter Brinkmann from the parties granted summary judgment on the affirmative claims asserted by J. Baxter Brinkmann International Corporation and The Brinkmann Corporation and from the trial court's award of damages, attorneys' fees, prejudgment interest, and postjudgment interest on items other than costs of court.  In all other respects, the trial court's judgment is **AFFIRMED**.

It is **ORDERED** that each party bear their own costs of this appeal.  Further, it is **ORDERED** that appellees J. Baxter Brinkmann International Corporation, The Brinkmann Corporation, and J. Baxter Brinkmann recover the full amounts to which they are entitled under the trial court's judgment from appellants Berryman's South Fork, Inc. and Richard Berryman and from any supersedeas bond or cash deposit in lieu of supersedeas bond.  After the judgment and appellants' costs of this appeal have been paid, the clerk of the trial court is **DIRECTED** to release the balance, if any, of any cash deposit in lieu of supersedeas bond to the person who made the deposit.

Judgment entered this 20th day of November, 2013.


/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE