**AFFIRM; and Opinion Filed April 28, 2017.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-16-00341-CV

**SHANEKA BUSBY BAKER, Appellant**
**V.**
**FORREST REGGIE CARR, Appellee**

**On Appeal from the County Court at Law No. 4**
**Dallas County, Texas**
**Trial Court Cause No. CC-15-04681-D**

## MEMORANDUM OPINION

Before Justices Francis, Lang-Miers, and Whitehill
Opinion by Justice Lang-Miers

Shaneka Busby Baker appeals a take-nothing judgment in favor of her landlord, Forrest

Reggie Carr, in this landlord-tenant dispute. Baker sued Landlord in justice court for breach of

contract, violation of the Texas Deceptive Trade Practices Act, and retaliation. The justice court

rendered a take-nothing judgment in favor of Landlord, and Baker appealed to the county court

at law. After a bench trial, the county court also rendered a take-nothing judgment in favor of

Landlord, and Baker appealed. We affirm the trial court's judgment.

### BACKGROUND

In 2012, Baker leased a rural single-family residence on one acre of land for herself and

her children from Landlord under a rental assistance program through the Department of

Housing and Urban Development and the Dallas County Department of Health and Human

Services Housing Division (the Housing Authority). Because of the size of the property, Baker

and Landlord agreed in writing that Landlord would provide lawn care. Landlord provided lawn care through a lawn care service owned by Emanuel Palmer for the first two years without incident.[1] In 2014, however, a dispute arose about the scheduling of lawn care. Baker complained that Palmer showed up at inconvenient times without notice. She testified that she needed a more rigid schedule so that she could prepare her disabled daughter for the noise and presence of the workers, and ensure that someone was home to watch their dog. Baker said Palmer showed up one time unannounced and took the gate off its hinges in order to enter the property. Her son testified that it made his mother anxious that someone entered the property without permission.

Landlord attempted to resolve Baker's complaints about lawn care while still providing lawn care to her. According to Landlord, Baker wanted Palmer to come on Saturdays at noon. But Landlord testified that Palmer worked in the area where Baker lived on Mondays and Tuesdays and could not accommodate Baker's request to come on Saturdays because of his other obligations. Landlord testified that Palmer "would come on every other Monday, Tuesday. And then he called me, and he was – he was very upset. He said that she had berated him and cursed him out right there in the street, and just went on and on and on. And he says, you know, I just – you know, he's a real passive dude, and he said, I can't do this. And so, he just left."[2]

Landlord told Palmer he would talk to Baker, and he thought he had everything worked out. But when Palmer came to mow Baker's yard the next time, "they got into the altercation. You know, she started yelling at him." Landlord said Baker texted him every time this happened. Finally, Palmer said "I'm not going to do this. . . . And he said, First of all, it's embarrassing . . . .

---

[1] The lease was extended each year for three years, with the expiration of the last extension being October 31, 2015. Baker testified that she was able to work out a suitable schedule for the lawn care service during the first two years.

[2] Landlord also stated that Baker's neighbor said he had to get a restraining order against Baker "because she was – you know, she came to my house, cussing me out, yelling at me." Apparently the neighbor had a birthday party and a couple of the guests parked at Baker's house, and "she came unglued about that . . . ." Landlord testified that he used to live in that house, and both the lawn service and the neighbor continued to do things the way Landlord had allowed when he lived there. Landlord said he advised them they could not do that any longer.

Second of all, I don't have to put up with that." Landlord thought he "got all that straight," but it happened again the next time Palmer came to mow. Landlord said Baker got mad because Palmer blew dried grass or leaves on some of her things she had just cleaned. Palmer offered to go back and clean it up, but Baker did not want that. So Landlord stopped providing lawn care to Baker. Baker told Landlord that she found someone to mow the yard for $50 each time, but Landlord said he already had a lawn care service. In 2014 and 2015, Baker and her sons tried to maintain the lawn using a push mower.

In April 2015, Baker complained to the Housing Authority about Landlord's failure to provide lawn care, other maintenance issues, and a rent dispute.[3] About a week later, Landlord sent a certified letter to Baker advising her that he would not renew her lease at the expiration of its term on October 31, 2015. The letter was returned unclaimed. Landlord called Baker in June and read the letter to her over the phone.

In approximately July 2015,[4] Baker sued Landlord in justice court and sought damages of $3,300 for breach of contract, violation of the DTPA, and retaliation alleging Landlord's "failure to honor lease agreements with cessation of lawn care repairs and termination (refusal to renew lease agreement), retaliation." In her complaint, she alleged that Landlord refused to renew the lease in retaliation for her "complaint of his harassment for monetary demands back in April, in addition to a declining mutually respected Landlord/Tenant relationship that has grown increasingly difficult due to his lack of prompt fulfillment, if at all, of his Landlord obligations." She alleged that Landlord's neglect of his obligations resulted in "much debris that pose health

---

[3] Landlord attempted to collect an additional $97 per month in rent from Baker. He testified that this dispute was resolved with the Housing Authority that same month. This was not an issue on appeal to the county court.

[4] Baker states that she sued Landlord in justice court in July 2015. The "Statement of Claim" is not dated, but is file stamped September 15, 2015. However, because the judgment in justice court is dated September 11, 2015, Baker must have filed the Statement of Claim prior to that date. She also filed an affidavit of inability to pay costs, and that document is dated July 23, 2015.

and safety hazards to myself and my family and/or future guests."[5] She sought damages under the DTPA and property code, asked that Landlord be ordered to provide repairs and lawn care for the remainder of her tenancy, pay moving expenses estimated to be $2,000, refund her deposit of $650, and pay $650 "in punitive damages for willful retaliation of refusal to renew."

On September 11, 2015, the justice court denied Baker all relief and rendered a take-nothing judgment in favor of Landlord. Baker appealed to the county court at law, and the case was set for a bench trial in February 2016. Meanwhile, two days before her lease expired on October 31, 2015, Baker sent a letter to Landlord advising him that due to circumstances she would not be able to vacate the premises until sometime in November. In November 2015, Baker and her family moved.

Baker moved for a continuance of the trial in county court, but it was not granted. The parties presented the evidence we previously detailed. Baker testified to damages of $465 related to lawn care; she did not testify about any other damages. The court took the matter under advisement and rendered a take-nothing judgment in favor of Landlord. Neither party asked for and the trial court did not make findings of fact and conclusions of law.

On appeal to this Court, Baker makes numerous arguments and attaches over 100 pages of documents to her brief. To the extent these documents were not admitted into evidence before the trial court, we have not considered them. She asks us to render judgment for her or, alternatively, remand to the trial court.

### STANDARD OF REVIEW & APPLICABLE LAW

We interpret Baker's issues in this appeal as challenging the sufficiency of the evidence to support the implied findings of the trial court. *See Colbert v. Langwick Sr. Residences*, No. 14-

---

[5] This allegation refers to Baker's claim that Landlord failed to keep the grass mowed, attracting rodents that infested a storage building on the property where she stored some of her things.

10-01163-CV, 2011 WL 6223964, at \*1 (Tex. App.—Houston [14th Dist.] Dec. 13, 2011, no pet.) (mem. op.). Because no findings of fact or conclusions of law were requested or filed, we imply the court made all the findings necessary to support its judgment. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). In evaluating the legal sufficiency of the evidence to support a finding, we follow the standards enunciated in *City of Keller v. Wilson*, 168 S.W.3d 802, 810–21 (Tex. 2005). If some evidence supports the implied finding, the issue fails. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam). If no evidence supports the implied finding, we next examine the record for evidence conclusively establishing the contrary proposition. *Id*. at 241–42. A matter is conclusively established only if reasonable persons could not differ in their conclusions about the evidence. *City of Keller*, 168 S.W.3d at 816.

In our review we are mindful that the trial court, as the factfinder in this case, is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *Id*. at 819. The factfinder may choose to believe one witness and disbelieve another. *Id*. And we must assume the factfinder decided all credibility questions in favor of the verdict if reasonable persons could do so. *Id*.

## DISCUSSION

### *Retaliation*

In issue one, Baker argues that Landlord retaliated against her for filing a complaint with the Housing Authority about "various issues." Baker argues that she established her claim for retaliation based on the timing of her complaint to the Housing Authority and Landlord's notice of non-renewal. *See* TEX. PROP. CODE ANN. § 92.331 (West 2014) (stating landlord may not retaliate against tenant by taking certain actions). She argues that she had been a good tenant for three years and the only reason for the non-renewal of the lease was her complaint to the Housing Authority. She cites several cases to support her argument, but those cases involved

–5–

termination of the leases before the expiration of the term, in other words, eviction proceedings. *See, e.g.*, *College Station Terrace Pines Apartments v. Laird*, No. 07-14-00137-CV, 2016 WL 638027, at *1 (Tex. App.—Amarillo Feb. 9, 2016, no pet.) (mem. op.). That is not the situation we have here, and Baker does not cite authority with facts similar to this case.

Baker's lease stated that Landlord "may only terminate the tenancy in accordance with the lease and HUD requirements." But Baker did not offer the entire lease or the HUD requirements into evidence. The portions of the lease admitted into evidence addressed the specific grounds for termination of the lease "during the term of the lease," but they did not address non-renewal of the lease at the expiration of the lease's term.

Additionally, section 92.332 of the property code states that the termination of a lease when a "tenant holds over after the landlord gives notice of termination at the end of the rental term and the tenant does not take action under Section 92.331 until after the landlord gives notice of termination" does not constitute retaliation. TEX. PROP. CODE ANN. § 92.332(b)(5). It is undisputed here that Landlord gave notice of non-renewal of the lease on April 15, 2015, that the lease term ended October 31, 2015, that Baker did not sue Landlord alleging retaliation until July 2015, and that Baker held over and did not vacate the premises until November 2015. Accordingly, Landlord's conduct does not constitute retaliation. *See id.*; *see also Holmes v. Al Jaafreh*, No. 10-11-00148-CV, 2013 WL 2395106, at *8 (Tex. App.—Waco May 30, 2013, no pet.) (mem. op.).

When there are no findings of fact and conclusions of law, we must affirm the judgment if it can be upheld on any legal theory supported by the evidence. *Worford*, 801 S.W.2d at 109. Based on the facts of this case, the trial court could have concluded that Baker did not allege a claim for retaliation. *See* TEX. PROP. CODE ANN. § 93.331(b)(5); *Holmes*, 2013 WL 2395106, at

*8. Consequently, we conclude that the evidence supports the trial court's judgment. We resolve issue one against Baker.

### Breach of Contract

In issue two, Baker argues that she conclusively established that Landlord breached the contract by failing to provide lawn care and by not taking care of the rodent infestation on the property. We disagree.

While it was undisputed that the lease required Landlord to provide lawn care and that he did not do so in 2014 and 2015, the evidence was conflicting about when Landlord told Baker she would be responsible for maintaining the lawn and whether Baker interfered with Landlord's performance under the contract to the extent that Landlord's performance was excused. *See Berryman's S. Fork, Inc. v. J. Baxter Brinkmann Int'l Corp.*, 418 S.W.3d 172, 197(Tex. App.— Dallas 2013, pet. denied) (stating general rule that performance under contract excused when party to contract prevents other party from performing). The evidence in favor of the verdict showed that Landlord made numerous attempts to provide lawn care for Baker, but because of Baker's conduct, Palmer refused to return to Baker's house to mow, and that is when Landlord told Baker she would have to maintain the lawn herself. At trial, the court characterized the evidence as Baker "basically ran them off" and "she had scared off the lawn service." The trial court resolved any conflict in the evidence in favor of Landlord, and there is evidence to support that implied finding. Consequently, the evidence is sufficient to support the trial court's judgment on this claim. We resolve issue two against Baker.

### Discrimination

In issue three, Baker contends that she is in a protected class and that Landlord refused to provide reasonable accommodations to her request for scheduled lawn care and maintenance.

She argues that her children had disabilities "and the accommodation was necessary especially for children who have to do homework and have focus issues." Baker did not raise this issue below and, consequently, it presents nothing for our review. TEX. R. APP. P. 33.1; *see Colbert*, 2011 WL 6223964, at *3. We resolve issue three against Baker.

### Security Doors

In issue four, Baker contends that Landlord violated the lease and the property code by failing to provide secure doors to a storage building on the property. Baker did not raise this issue below and, consequently, it presents nothing for our review.[6] TEX. R. APP. P. 33.1. We resolve issue four against Baker.

### Security Deposit

In issue five, Baker contends that Landlord violated the lease by not returning her security deposit. She argues that she cleaned the property "and left it, with exception to normal wear and tear, in similar fashion to pre-lease condition." During Landlord's presentation of his case in chief, he referred to damages to the house that he had to repair. The trial court told Landlord that he "didn't file a counterclaim against" Baker for damages. Landlord clarified that he was not asking for damages from her, and referred to her rent deposit. The court commented, "Well, she didn't make a claim against you for the security deposit." The court and Landlord then discussed a list prepared by Landlord of repairs he made using Baker's security deposit.

The record shows that Baker did include a claim for return of the security deposit in her "complaint" in justice court. But she did not offer evidence to support this claim during the presentation of her case on appeal to the county court, nor did she object to the court's comment

---

[6] Additionally, Baker's citations to the property code refer to the security of the "dwelling." *See* TEX. PROP. CODE ANN. §§ 92.001, .153. She does not cite authority for the proposition that a landlord is required to provide those security devices for a storage building not attached to the "dwelling."

that she had not made a claim for return of the deposit. Consequently, she may not argue this claim now. TEX. R. APP. P. 33.1. We resolve issue five against Baker.

### *Landlord Access/Covenant of Quiet Enjoyment*

In issue six, Baker argues that Landlord "infringed upon [her] home life to her dismay in the final days of her tenancy by showing the property to prospective tenants [without notice or permission from her]. He simply used his key." She also argues that Landlord "had the responsibility to oversee that any of his contractors respected [her] right to request an agreed upon time for which to render services for maintenance and/or lawn care." We previously addressed Baker's complaints regarding lawn care. With regard to Landlord's showing the property to prospective tenants without her permission, Baker did not raise this issue below and, consequently, it presents nothing for our review. TEX. R. APP. P. 33.1. We resolve issue six against Baker.

### *Judicial Bias*

In issue seven, Baker argues that the trial court was biased against her and prevented her from properly presenting her case. A complaint of judicial bias must be made at the time the allegedly improper comment is made in order to preserve error for appellate review. *Dow Chem. Co.*, 46 S.W.3d at 241. Baker did not complain at the time and, as a result, this issue presents nothing for our review. TEX. R. APP. P. 33.1. We resolve issue seven against Baker.

### CONCLUSION

Having resolved all of Baker's issues against her, we affirm the trial court's take-nothing judgment in favor of Landlord.

/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE

160341F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

SHANEKA BUSBY BAKER, Appellant

No. 05-16-00341-CV      V.

FORREST REGGIE CARR, Appellee

On Appeal from the County Court at Law No. 4, Dallas County, Texas
Trial Court Cause No. CC-15-04681-D.
Opinion delivered by Justice Lang-Miers.
Justices Francis and Whitehill participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 28th day of April, 2017.