**AFFIRMED and Opinion Filed March 31, 2020**



In The

**Court of Appeals**
**Fifth District of Texas at Dallas**

_____

**No. 05-16-01518-CV**
_____

**CUDD PRESSURE CONTROL, INC. AND CUDD PUMPING SERVICES, INC., Appellants**
**V.**
**EXCO RESOURCES, INC. AND EXCO OPERATING COMPANY, LP, Appellees**

**On Appeal from the 116th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-14-06427**

## MEMORANDUM OPINION

Before Justices Molberg, Carlyle, and Evans
Opinion by Justice Evans

On appeal, appellants Cudd Pressure Control, Inc. and Cudd Pumping Services, Inc. ("Cudd") assert the trial court erred by: (1) refusing to consider parol evidence to clarify alleged ambiguities in the Contractor Dedicated Crew Work Order ("Work Order"); (2) ruling Cudd failed to plead the defense of offset to appellees EXCO Resources, Inc.'s and EXCO Operating Company, LP's ("EXCO") counterclaim; and (3) concluding Cudd's failure to provide reconciliation reports

under article 6 of the Work Order is a condition precedent that bars Cudd's defense to EXCO's counterclaim. We affirm.

## BACKGROUND

### A.    Factual Background

EXCO is involved in the exploration and development of oil and gas reserves. Cudd provides oil field services such as hydraulic fracture stimulations. In May 2010, EXCO and Cudd entered into a Master Service and Supply Agreement ("Master Agreement") for the provision of services. Pursuant to the Master Agreement, Cudd agreed to supply EXCO with various services related to wells operated by EXCO.

In October 2011, EXCO and Cudd entered into the Work Order for hydraulic fracture stimulation in east Texas and northern Louisiana. The Work Order contains a provision which specifically incorporated the Master Agreement.[1] At issue in this case are three provisions of the Work Order—Articles 6, 18 and 19.

Article 6 of the Work Order addresses billing, reconciliation reports and invoices:

> Company will be billed on a per stage basis at the worksite. The ticket will reflect a flat "per stage" fixed cost charge based on the assumed fixed cost recovery threshold of one contractor crew performing at least two (2) stages ("Fracs") in a 12 hour day, for an average of forty-four (44) Fracs per month in a twenty (20) day pumping month, and the

---

[1] Article 1 of the Work Order provides: "The terms and conditions of the above referenced Master Service and Supply Agreement shall remain in effect and shall be incorporated into and govern this [Work Order]."

applicable variable and line item costs. Contractor shall provide Company a monthly or quarterly reconciliation report, at Company's option, clearly showing the difference between the total fixed costs billed during the period and the actual fixed costs due for the period. Any amount billed and paid by Company in excess of the actual fixed costs due will be credited to Company's account. Company will be invoiced for any additional sums due Contractor as a result of any billing deficits that occurred during the period. All Contractor bills and invoices shall reference this Agreement and the site where the work is performed.

Article 18 of the Work Order addresses pricing and provides as follows:

Pricing shall be determined by combining a Fixed Service Charge with applicable Variable Charges for the services performed by Contractor, in accordance with the pricing tables in sections (a) and (b) below. Thereafter, the service charges, rates, or other remuneration shall be changed only upon mutual agreement by both parties.

The pricing table in section (a) of article 18 provides Cudd's Fixed Service Charge is $57,364.000 for a dedicated contractor crew performing 44 Fracs per month on a 12 hour basis.

Article 19 of the Work Order, entitled "Price Adjustments," describes the procedures for obtaining adjustments to the pricing described in Article 18. Specifically, Article 19 provides as follows:

All fixed and variable prices herein shall be fixed for six (6) months. However, for the purpose of maintaining the benefit of the parties' bargain, Company and Contractor agree that after the expiration of the first six (6) months of this Agreement, Contractor's fixed and/or variable pricing may be adjusted once every six months to reflect any increase or decrease in the market prices of sand, organic chemicals, diesel fuel, labor, the replacement and recertification costs of Frac irons, Fluid-Ends, and expendables.

The party seeking the price adjustment shall provide thirty (30) days prior written notice of its intent to adjust price to the other party. Each

adjustment request shall include: the amount of the proposed adjustment; a written explanation of the need for the adjustment; and reasonable evidence of the percentage change in market price. Exhibit C provides an example of the method used to track changes in the replacement and recertification costs of Frac irons, Fluid-Ends and expendables.

Price adjustments shall become effective no later than thirty (30) days after receipt by the non-requesting party of the price adjustment notice. Should the non-requesting party have reason to challenge the amount of an adjustment request, the nonrequesting party must notify the other party of the reason for its challenge including supporting evidence within fifteen (15) days after receipt of the adjustment notice, and the parties shall negotiate in good faith on the appropriate adjustment amount.

Because the parties acknowledge that this agreement is intended to be cooperative in nature, but that fluctuations in price are inherent in the industry, the challenging party agrees to honor any adjustment request in full during the course of negotiations, and up to five (5) days thereafter. Negotiated price adjustments shall take effect on the fifth day after an agreement has been reached. Notwithstanding anything contained herein to the contrary, in no event shall Contractor be required to disclose any trade secrets or third party supplier pricing not directly billed to the account of company.

Important to our analysis later are the provisions requiring thirty days' prior written request for a price change containing evidence of market price and a fifteen day opportunity to object and negotiate an agreed price increase.

The two-year term of the Work Order expired on December 31, 2012, and EXCO did not exercise its option to renew the agreement for an additional year. In

February 2013 and without having provided any reconciliation reports, Cudd invoiced EXCO for $6,734,240.88 for increased costs of fluid ends and frac irons.[2]

## B.    Procedural Background

In June 2014, Cudd filed a lawsuit against EXCO alleging causes of action for breach of contract, promissory estoppel, and mutual mistake and seeking reimbursement the costs for fluid ends replacement.  On September 3, 2015, EXCO filed a traditional and no-evidence motion for summary judgment on Cudd's claims. Cudd filed a response which included the affidavit of Tim Mathews, the Service Line Vice President for Cudd Energy Services.  EXCO objected to certain paragraphs of Mathews's affidavit as being inadmissible under the parol evidence rule, irrelevant, and self-serving.  On September 21, 2015, the trial court granted EXCO's motion as to the promissory estoppel and mutual mistake claims and denied the motion as to the breach of contract claim.  The trial court also sustained EXCO's objections to Mathew's affidavit and struck the evidence.

In February 2016, Cudd filed an amended petition alleging it was entitled to "payment of the replacement fluid-ends as a fixed cost, pursuant to Article 6" of the Work Order.  Cudd's amended petition only contained a breach of contract claim. EXCO then filed a second motion for summary judgment on Cudd's breach of

---

[2] Fluid ends are a component of the pumping equipment used in the hydraulic fracturing process.  In its Objections and Response to EXCO's Second Motion for Summary Judgment, Cudd states that "[t]he parties do not dispute that fluid-ends are fixed costs."

contract claim. Cudd filed a response which included the deposition testimony of Mathews, Bob Weaver, and Marty Yohn as well as the affidavit of Steve Briggs. EXCO objected to various statements in the affidavits or deposition testimony as being inadmissible based on the parol evidence rule, relevancy, the statute of frauds, speculation and hearsay. The trial court sustained EXCO's objections to the challenged portions of Cudd's summary judgment evidence and granted EXCO's second summary judgment motion.

EXCO sought and obtained leave to file a counterclaim against Cudd for breach of contract. In its counterclaim, EXCO alleged Cudd had overcharged EXCO $136.00 per stage for fixed service charges. In May 2016, Cudd filed an answer asserting numerous defenses, including the defense of offset.

On September 19, 2016, the parties appeared at a pretrial conference. The trial court and counsel held a lengthy conference off the record during which counsel argued numerous matters on which the trial court ruled. At the conclusion, the trial court summoned the court reporter, then on the record summarized every argument previously made by each side and each of her rulings. After summarizing each argument on a particular matter and her ruling, the trial court provided counsel the opportunity to add anything to her summary and on a few matters they did; otherwise, they affirmed the trial court's summary of each argument and her rulings

were accurate.[3] The trial court noted the only remaining issue was EXCO's breach of contract claim against Cudd. EXCO argued Cudd failed to plead offset as an affirmative defense to EXCO's claim for reimbursement. The trial court concluded "offset was not pled as a defense to [EXCO's] claim for reimbursement of the overcharge." The trial court then ruled Cudd was not entitled to be paid above the contractual amount of $57,364 per frac because no reconciliation reports were ever provided to EXCO. Accordingly, the trial court ruled in favor of EXCO on its counterclaim and the parties agreed to present testimony on EXCO's attorney's fees to the court. The trial court entered judgment which referenced its prior summary judgment rulings and awarded EXCO damages, attorney's fees, and interest.

## ANALYSIS

### A.    Standard of Review

We review an order granting summary judgment de novo. *Alexander v. Wilmington Sav. Fund Soc'y*, 555 S.W.3d 297, 299 (Tex. App.—Dallas 2018, no pet.). However, we review a trial court's decision to admit or exclude summary judgment evidence under an abuse of discretion standard. *Holloway v. Dekkers*, 380 S.W.3d 315, 320 (Tex. App.—Dallas 2012, no pet.). We must uphold the trial court's ruling if the record shows any legitimate basis supporting that ruling. *Id.*

---

[3] The appellate record is well-preserved by the trial court's method and neither sides asserts the contrary. *See* TEX. R. APP. P. 33.1.

### B. Summary Judgment Evidence

In its first issue, Cudd argues there was an oral agreement in which the parties agreed to treat fluid ends as a reimbursable expense rather than as part of the fixed service charge in the Work Order. Cudd asserts the trial court improperly refused to consider parol evidence that would have resolved the ambiguity of the Work Order and established the parties' oral agreement.[4]

#### i) Parol evidence

The primary concern of a court in construing a written contract is to ascertain the true intent of the parties as expressed in the instrument. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). If a written contract is so worded that it can be given a definite or certain legal meaning, then it is not ambiguous. *Id.* Further, a disagreement over the meaning of a contract provision does not render the provision ambiguous. *Nicol v. Gonzales,* 127 S.W.3d 390, 394 (Tex. App.—Dallas 2004, no pet.). Parol evidence is not admissible for the purpose of creating an ambiguity. *CBI Indus.*, 907 S.W.2d at 520. If, however, the language of a contract is subject to two or more reasonable interpretations, it is ambiguous. *Id.* Whether a contract is ambiguous is a question of law for the court

---

[4] EXCO asserted parol evidence, statute of frauds, relevance, hearsay and speculation objections in response to the evidence submitted in support of Cudd's response to EXCO's second motion for summary judgment. The trial court sustained all of EXCO's objections without stating on which ground they were granted. We note Cudd did not address EXCO's relevance, hearsay or speculation objections in its briefing. For this reason alone, the trial court's ruling should be affirmed.

to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered. *Id.* Only where a contract is first determined to be ambiguous may the courts consider the parties' interpretation and admit extraneous evidence to determine the true meaning of the contract. *Id.*

Although Cudd did not plead or otherwise argue the Work Order was ambiguous in the trial court below, it now argues on appeal the Work Order is ambiguous because Article 19 does not state it is the sole or exclusive method to recover the cost of fluid ends.[5] In support of this assertion, Cudd cites to *Sage Street Associates v. Northdale Construction Co*, 863 S.W.2d 438 (Tex. 1983). However, the court in *Sage Street* only stated a "court *may* conclude that a contract is ambiguous even in the absence of such a pleading by either party." *See Sage Street Assocs.,* 863 S.W.2d at 445 (emphasis added); *see also Crow-Billingsley Stover Creek, Ltd. v. SLC McKinney Partners, L.P.*, No. 05-09-00962-CV, 2011 WL 3278520, at *8 (Tex. App.—Dallas Aug. 2, 2011, no pet.). Further, we distinguished *Sage Street* as it involved an appeal after a jury trial in which ambiguity was not pled but was tried by consent. *Crow-Billingsley Stover Creek, Ltd.*, 2011 WL 3278520, at *8. For that reason, this Court previously noted, "[w]e cannot agree *Sage Street*

---

[5] The only mention of "ambiguity" by Cudd in the pleadings below is contained in its response to EXCO's second motion for summary judgment. In that pleading, Cudd argued that "the [Work Order] does not provide the type of clarity with respect to price adjustments accounting for market changes addressed in Article 19 versus the adjustments to the methodology of fluid-end costs addressed in Exhibit C." This is not the same argument that it presents on appeal.

*Associates* stands for the proposition that it is 'not necessary' to plead ambiguity at the trial court level in order to raise that issue in this Court in a summary judgment case." *Id.* Similarly, this case was a summary judgment case and the issue of ambiguity was not tried by consent.

However, were we to proceed past any assumed pleading defects, we would then examine whether the trial court acted within its discretion in excluding Cudd's parol evidence. As noted in their objection to Cudd's evidence, EXCO asserted Cudd's deposition and affidavit evidence was offered to "alter the plain meaning of the [Work Order]" or "contradict, vary or add terms to the terms" of the Work Order. In this case, the terms of the Work Order are not ambiguous. Article 18 of the Work Order provides pricing is composed of a fixed service charge and a variable charge and determined in accordance with the tables set forth in article 18. Both parties agree fluid ends are part of the fixed service charge. Article 18 then provides, "service charges, rates, or other remuneration shall be changed only upon mutual agreement by both parties." Article 19 of the Work Order then provides all fixed and variable prices are fixed for six months but after that time period either party could adjust the pricing on either fixed or variable prices to "reflect any increase or decrease in the market prices" of numerous items including fluid ends. The Work Order then provided a very specific method for how the parties would address price changes of fluid ends, the very subject matter at issue in this lawsuit—such as thirty days' prior written request for a price change containing evidence of market price

and a fifteen day opportunity to object and negotiate an agreed price increase. An unambiguous contract will be enforced as written, and parol evidence will not be received for the purpose of creating an ambiguity or to give the contract a meaning different from that which its language imports. *See David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008). For this reason, we conclude the trial court acted within its discretion to exclude parol evidence based on Cudd's ambiguity argument.

### ii) Statute of frauds

The statute of frauds requires an agreement to be in writing if it cannot be performed within one year from the date it was made. *See* TEX. BUS. & COM. CODE ANN. § 26.01(b)(6). Not every oral modification to a contract within the statute of frauds is barred. *Am. Garment Props., Inc. v. CB Richard Ellis-El Paso, L.L.C.*, 155 S.W.3d 431, 437 (Tex. App.—El Paso 2009, no pet.). However, an oral modification of a written contract is enforceable under the statute of frauds only if the modification does not materially alter the obligations imposed by the underlying agreement. *Blackstone Med., Inc. v. Phoenix Surgicals, L.L.C.*, 470 S.W.3d 636, 647 (Tex. App.—Dallas 2015, no pet.).

Here, Cudd argues the alleged oral agreement to reimburse the costs of fluid ends separately rather than as an adjustment to the fixed service charge is not subject to the statute of frauds because it "did not materially alter the obligations of the contract." In support of this argument, Cudd cites to *Garcia v. Karam*, 276 S.W.2d 255 (Tex. 1955), a case which involved a purchaser's action for a seller's alleged

–11–

breach of a written contract for the sale of realty. However, as this Court has previously noted, *Garcia* did not involve a contract with an initial term longer than one year nor did it discuss application of the statute of frauds to such a contract. *Berryman's South Fork, Inc. v. J. Baxter Brinkmann Int'l Corp.*, 418 S.W.3d 172, 194 (Tex. App.—Dallas 2013, pet. denied). In that case, we concluded as follows:

> Appellants cite no authority, and we have found none, to support the position that a modification not capable of being performed within one year falls outside the statute of frauds if it constitutes an "immaterial change" to the original contract. We cannot agree with appellants that the materiality of the modification in question has any bearing on the application of the statute of frauds in this case.

*Id.* at 194 (internal citations omitted).

In this case, Cudd argues it paid for the replacement of fluid ends used on fracturing operations it performed on behalf of EXCO throughout the contractual term. At the end of the two-year term, Cudd submitted an invoice for the costs of the fluid ends. As Cudd waited until the end of the two-year term of the Work Order before submitting its invoice, the modification was not capable of being performed outside of the statute of frauds and the materiality of the modification is irrelevant. *Id.*

However, even if we were to analyze the materiality of the modification, we cannot agree such a change is immaterial. Articles 18 and 19, as described above, contained specific pricing terms and tables explaining the charges and how to obtain pricing adjustments. EXCO argues in its brief "the price adjustment provisions in

the [Work Order] were heavily negotiated and critical to EXCO because EXCO was required to charge expenses back to its working interest owners at the time the expenses were concerned." Thus, Cudd's argument that the oral modification "merely changed the timing of the payment" is inaccurate when the alleged modification would affect what EXCO was able to charge back to its working interest owners. Cudd does not cite to any cases where heavily negotiated terms such as pricing and pricing adjustment are defined as immaterial. For these reasons, we conclude the trial court acted within its discretion to exclude parol evidence based on Cudd's statute of frauds argument and we overrule Cudd's first issue.[6]

## C.    Offset

In its second issue, Cudd argues the trial court incorrectly ruled Cudd failed to plead the defense of offset to EXCO's counterclaim for breach of contract. Cudd also objects the trial court also erred by denying it leave to amend, allowing a trial amendment, or granting a continuance for discovery.

### i)    Additional facts

On March 4, 2016, EXCO sought leave to file a counterclaim against Cudd. In its breach of contract claim, EXCO asserted Cudd breached the Work Order by overcharging EXCO $136 per stage for fixed service charges.

---

[6] As we have affirmed the trial court's decision on the basis of parol evidence as well as statute of frauds, we need not address the remaining arguments asserted by EXCO.

The trial court granted EXCO's motion for leave on April 14, 2016, and the order provided the counterclaim was deemed filed as of March 4, 2016.

On May 4, 2016, Cudd filed an original answer to EXCO's counterclaim and asserted numerous defenses. On July 6, 2016, Cudd filed its First Amended Original Answer to Counter-Plaintiffs' Original Counterclaim. Paragraph 10 of the first amended answer provides as follows:

> EXCO's claims are barred, in whole or in part, because Cudd is entitled to offset for sums owed by EXCO for its failure to reimburse Cudd for costs for consumables and other reimbursable costs that EXCO agreed to pay.

On September 19, 2016, the trial court held a pretrial conference and made the following statements:

> THE COURT: During the course of our pretrial conference on the motion in limine, we started talking about this issue of whether or not offset had been pled as a defense to the claim that is currently before the Court by EXCO, that claim being, as I mentioned earlier, a claim for reimbursement for what EXCO describes as an overpayment to the tune of $66,184.
>
> The claim is predicated upon the theory -- and, Ms. McComas, I'll have you confirm this to make sure that I have it accurate for the record. But the claim for $67,184 is predicated upon the theory that Cudd overcharged EXCO $136 for 494 stages that were performed on or after March 4th, 2012.
>
> MS. MCCOMAS: That's correct.
>
> THE COURT: All right. And so reimbursement then is being sought for that $136 times the 494 stages, to equal the 66 -- 67,184. Is that fair?
>
> MS. MCCOMAS: Correct.

THE COURT: The -- the contention that you made during the pretrial conference, Ms. McComas, that there is no pleading before the Court where offset has been pled as an affirmative defense to that claim, only as an affirmative defense to a prior claim that the Court has dispensed with in summary judgment. Fair?

MS. MCCOMAS: Fair.

THE COURT: Ms. Vulpitta, you then drew the Court's attention to various provisions in your live pleading, we looked in particular at Paragraph 3[7] and we looked at Paragraph 10, and the Court indicated that the Court was not and is not persuaded that those – that Paragraph 3 supports an offset defense as it relates to this specific claim that is before the Court today. Fair?[8]

MS. VULPITTA: Fair.

THE COURT: Okay. Having reached the conclusion that offset was not pled as a defense to Cudd's claim for reimbursement of the overcharge of 67,184, the Court then had a discussion about the extent to which there would be an unfair surprise or prejudice in the Court allowing Cudd to go forward on that. And we had a discussion that included, Ms. McComas, that you all have not conducted discovery on any such defense because it was not pled . . . .

---

[7] Paragraph 3 of Cudd's Answer states as follows:

EXCO's claims are barred, in whole or in part, due to EXCO's promise to pay increased stage costs as the result of negotiations between Cudd and EXCO; EXCO's foreseeability that Cudd would rely on EXCO's promise to pay higher stage costs during the negotiation of certain price adjustments and pricing changes under the terms of the DCWO; and Cudd's substantial reliance upon EXCO's promise to pay higher stage costs when it ultimately agreed to its detriment to certain price adjustments and pricing changes under the terms of the DCWO.

[8] Cudd does not assert that the trial court erred by failing to consider paragraph 3 as a defense to EXCO's counterclaim.

### ii) Analysis

Cudd argues there is more than one interpretation of what fluid ends means, although it previously characterized the term as a consumable or reimbursable cost. For example, Cudd notes that the Work Order also identified the minimum guaranteed fixed service charge as a "reimbursable cost."[9]  At the pretrial conference, counsel for Cudd argued that "[i]t is Cudd's position that those other costs would have and does [sic] include the costs associated related to fixed costs that's in Article 18 that has the pricing table per stage."  Cudd appears to argue EXCO owed Cudd additional charges for months that EXCO failed to meet the bare minimum threshold of at least 30 fracs per month and as well as those months EXCO should have paid a higher fixed cost per month or per quarter as stated in article 18(a)(iii) of the Work Order.  To the extent the pleadings did not "properly address the offset for the fixed costs," Cudd argues the trial court erred by failing to allow Cudd to replead, offer a trial amendment, or allow Cudd a continuance to conduct discovery on or respond to EXCO's claim of unfair surprise and prejudice.

The trial court concluded the live pleading only contained an affirmative defense to a prior claim it had disposed of on summary judgment, and did not contain an affirmative defense of offset for the claim before it.  We agree.  The burden of pleading offset and proving facts necessary to support it are on the party making the

---

[9] Article 18 provides:  "[EXCO] agrees to reimburse [Cudd] for fixed cost charges of $2,524,043 per month for total Frac counts under 30 Fracs per month or 90 Fracs per quarter."

assertion. *Brown v. Am. Transfer and Storage Co.*, 601 S.W.2d 931, 936 (Tex. 1980). Here, the argument asserted by Cudd in its pleadings is not the argument asserted by Cudd at the pretrial conference. Cudd had the burden of establishing the facts and failed to do so.

In regard to Cudd's assertion the trial court abused its discretion in denying Cudd an opportunity to replead, offer a trial amendment, or allow Cudd a continuance to conduct discovery, we note Cudd elected to raise this new argument immediately before trial was scheduled to begin. Cudd did not provide EXCO with fair notice of this affirmative defense. Absent a clear abuse of discretion, we will not disturb the trial court's rulings. [10] Under these circumstances, it was well within the trial court's discretion to deny Cudd's request to amend, leave to file a trial amendment, or allow a continuance. Accordingly, we overrule Cudd's second issue.

---

[10] *See Hardin v. Hardin*, 597 S.W.2d 347, 349 (Tex. 1980) ("The right of amendment under Rule 63 is subject to the opposing party's right to show surprise, as determined in the exercise of the trial court's discretion. This showing may be based on the trial court's conclusion that the amendment on its face is calculated to surprise or that the amendment would reshape the cause of action, prejudicing the opposing party and unnecessarily delaying the trial."); *Geis v. Colina Del Rio, LP*, 362 S.W.3d 100, 116 (Tex. App.—San Antonio 2011, pet. denied) ("A trial court has the discretion to refuse a trial amendment when the amendment asserts a new cause of action or defense, and therefore, is prejudicial on its face, and the opposing party objects to the amendment."); *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 800 (Tex. 2002) ("This Court will not disturb a trial court's order denying a motion for continuance unless the trial court has committed a clear abuse of discretion.").

**D.    Condition Precedent**

In its third issue, Cudd argues the trial court erred in concluding article 6 of the Work Order is a condition precedent that bars Cudd's defense to EXCO's counterclaim.

**i)    Additional facts**

At the September 19, 2016 pretrial conference, the trial court concluded Cudd is not able to claim or offet additional amounts as a matter of law because no reconciliation reports were ever provided, regardless of whether the affirmative defense of offset had been adequately pled:

> THE COURT:  [Y]ou believe that as a matter of law they are not able to raise the issues that they desire to raise in connection with the purported offset defense because of Paragraph 6 in the [Work Order], which is Plaintiff's Exhibit 1A in the pretrial pleadings.  Fair?
>
> MS. MCCOMAS:  Correct.
>
> THE COURT:  Okay.  Your raising the issue in Paragraph or Article 6 caused the Court then to have to examine whether or not as a legal matter Cudd is entitled to raise that issue of offset.  So setting aside for a moment that there's no pleading, then going on to this legal issue of whether or not they are entitled to claim this, that was the issue that the Court was presented with.
>
> And after analyzing the language in Paragraph 6 or Article 6, the Court concludes that Cudd is not entitled to be paid an amount above the $57,364 based on 44 fracs per month, the 44-frac-per-month default provision that's set forward in the contract, because no reconciliation reports were ever provided.  And as I understood it, to this day no reconciliation reports have been provided.

Is that fair in terms of what we talked about off the record, counsel?

MS. MCCOMAS: Your Honor, and no invoices.

THE COURT: And no invoices.

So based upon that, the Court reached that conclusion. And -- and so where does that leave us? Well, it's undisputed that we had 494 stages under the [Work Order] that were billed on or after March 4th, 2012. That's not in dispute, correct, parties?

MS. VULPITTA: Correct.

MR. ANIGIAN: Correct.

THE COURT: And it is further not in dispute that an amount of $136 was billed in excess of 57,364 for each one of those stages.

MR. ANIGIAN: Correct.

MS. VULPITTA: Correct.

***

THE COURT: All right. So it seems then that based on the Court's ruling on the legal issue of the effect of Article 6 to the -- the matter that's before the Court, that the only factual dispute for the jury is on the reasonableness and necessity of attorney's fees on the claim that EXCO has before the Court.

### ii) Analysis

The trial court concluded Cudd could not raise an offset defense as a matter of law because no reconciliation reports were provided in accordance with article 6 of the Work Order. Essentially, the trial court concluded, even if offset had been pleaded as Cudd argued it, Cudd's failure to deliver a reconciliation report prevented it from claiming additional alleged deficits owing by EXCO.

–19–

In response, Cudd argues EXCO had a duty to request the reconciliation reports and article 6 does not provide any deadlines for producing these reports. We disagree with this interpretation. Article 6 of the Work Order provides, "[Cudd] shall provide [EXCO] a monthly or quarterly reconciliation report, at [EXCO's] option, clearly showing the difference between the total fixed costs billed during the period and the actual fixed costs due for the period." In this provision, the parties agreed Cudd *shall* provide the reconciliation reports to EXCO. Further, while EXCO had the option to request such reports either monthly or quarterly, Cudd was required to provide such reports on at least a quarterly basis. Had the reconciliation reports been provided to EXCO on a quarterly basis, then the Master Agreement required EXCO to make payment within thirty days.[11]

Finally, Cudd argues the trial court "inferred a condition precedent from an absence of terms" and violated the canon of contract construction that a court may not rewrite the parties' contract. Cudd cites numerous cases in support of its assertion that courts will not construe a contract provision as a condition precedent

---

[11] Article III of the Master Agreement provides as follows:

Unless otherwise agreed to in a separate written agreement between [Cudd] and [EXCO], within thirty (30) days after the receipt by [EXCO] of [Cudd's] invoice, and as fully complying with all specifications and requirements of this Agreement and any work orders or purchase orders, [EXCO] shall pay [Cudd], as provided below, for (i) services performed or (ii) goods, equipment or facilities delivered.

unless compelled to do so by language that may be construed in no other way.[12] We disagree with Cudd's conclusion that the trial court added a contract term or re-wrote the language. To the contrary, the trial court applied the terms of article 6 as they were written. At the pretrial conference, the trial court noted Cudd was not entitled to be paid an amount above $57,364 based on 44 fracs per month because no reconciliation reports had ever been provided. Further, the trial court noted, "[a]nd as I understood it, to this day no reconciliation reports have been provided." As of the date of trial, Cudd had never provided a reconciliation report or invoiced EXCO for any amounts it sought to claim in its offset defense. In this situation, the trial court was not reading a term into the contract but logically applying the existing contract terms—Cudd cannot offset hypothetical amounts never submitted against the determined amount, $67,184, owed to EXCO.

For these reasons, we conclude the trial court properly directed verdict in favor of EXCO on its breach of contract claim and we overrule Cudd's third issue.

## CONCLUSION

For all the reasons stated above, we affirm the trial court's judgment.

---

[12] *See Chambers v. Hunt Petroleum Corp.*, 320 S.W.3d 578 (Tex. App.—Tyler 2010, no pet); *Arbor Windsor Court, Ltd. v. Weekley Homes, LP*, 463 S.W.3d 131 (Tex. App.—Houston [14th Dist.] 2015, pet. denied); *Criswell v. European Crossroads Shopping Center, Ltd.*, 792 S.W.2d 945 (Tex. 1990).

/David Evans/

DAVID EVANS
JUSTICE

161518F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CUDD PRESSURE CONTROL, INC. AND CUDD PUMPING SERVICES, INC., Appellants

No. 05-16-01518-CV        V.

EXCO RESOURCES, INC. AND EXCO OPERATING COMPANY, LP, Appellees

On Appeal from the 116th Judicial District Court, Dallas County, Texas Trial Court Cause No. DC-14-06427. Opinion delivered by Justice Evans. Justices Molberg and Carlyle participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees EXCO RESOURCES, INC. AND EXCO OPERATING COMPANY, LP recover their costs of this appeal from appellants CUDD PRESSURE CONTROL, INC. AND CUDD PUMPING SERVICES, INC.

Judgment entered March 31, 2020.